THE UNITED STATES, *v.* GABRIEL F. IRVING, JAMES E. DEKAY, FRANCIS R. TILLON, AND CHARLES P. CLINCH, SURVIVING EXECUTORS OF THE LAST WILL AND TESTAMENT OF HENRY ECKFORD, DECEASED.

When a collector is continued in office for more than one term, but gives different sureties, the liability of the sureties is to be estimated just as if a new person had been appointed to fill the second term.

When the accounts of a collector are returned to the Treasury quarterly, and the date of the commencement and expiration of his term of office is on some intermediate day between the beginning and end of the quarter, a re-statement and Treasury transcript of his account up to the end of his term is legal evidence in a suit against the sureties.

Such a re-statement does not falsify the general accounts, but arranges the items of debits and credits so as to exhibit the transactions of the collector during the four years for which the sureties were responsible.

The amount charged to the collector at the commencement of his second term is only *prima facie* evidence against the sureties.

But payments into the Treasury of moneys accruing and received in the second term, should not be applied to the extinguishment of a balance apparently due at the end of the first term. Payments made in the subsequent term, of moneys received on duty bonds, or otherwise, which remained charged to the collector as of the preceding official term, should be so applied.

The settlement of quarterly accounts at the Treasury, running on in a continued series, is not conclusive. The officers of the Treasury cannot, by any exercise of their discretion, enlarge or restrict the obligation of the collector's bond. Much less can they, by the mere fact of keeping an account current in which debits and credits are entered as they occur, and without any express appropriation of payments, affect the rights of sureties.

THIS case came up from the Circuit Court for the southern district of New York, under a certificate of division in opinion between the judges of that court upon the two following points:

1. Whether the transcript from the books and proceedings of the Treasury, given in evidence on the part of the United States to show the indebtedness of Swartwout on the 28th day of March, 1834, on which day the second term of office of said Swartwout expired, was, in this case, competent and legal evidence for that purpose.

2. Whether the payments made by said Samuel Swartwout subsequently to the said 28th day of March, 1834, should be applied to the discharge of his indebtedness existing on said 28th day of March, 1834, or accruing during his second term of office, or whether such payments should be applied to the discharge of his indebtedness accruing after that time.

The facts in the case were as follows:

Swartwout was appointed collector at the port of New York on the 1st day of May, 1829; but his proceedings during this, his first term, have nothing to do with the present case.

On the 29th of March, 1830, his second term commenced, and he was appointed for four years.

On the 22d of June, 1830, he gave a bond for the faithful performance of his duties, in the mode prescribed by law, with several sureties, one of whom was Henry Eckford, whose executors are parties to this suit. The penalty of the bond was $150,000, and the condition ran thus: "Now, therefore, if the said Samuel Swartwout hath truly and faithfully executed and discharged, and shall continue truly and faithfully to execute and discharge all the duties of the said office, according to law, then the above obligation to be void and of none effect; otherwise it shall abide and remain in full force and virtue."

Quarterly accounts were rendered to the Treasury Department, according to law; but they continued to be made out, as they had been during his temporary appointment, running from the 1st of January to the 31st of March, from the 1st of April to the 30th of June, and so on. In these quarterly accounts were stated the various sums received by him on account of the government, and also the payments which he had made on behalf of the United States, although it often happened that the covering war-

rants from the Treasury, the final vouchers for such payments, were not received in time to be returned with said quarterly accounts, in which case they were thrown into the next quarter, when the proper credits were given.

Swartwout's third term of office commenced on the 29th of March, 1834; and the bond which he gave contained a condition similar to the one which has been recited, but Henry Eckford was not one of his sureties. The time, therefore, covered by Eckford was from the 28th of March, 1830, to the 28th of March, 1834, inclusive of the latter day.

In his accounts for 1834, Swartwout continued to make them up for the quarters of the year, as he had done, and his account for the first quarter was brought up to, and ends on, the 31st March. No account was filed by him ending on the 28th of March. The one ending on the 31st shows a large balance of "cash on hand."

In adjusting this account, the auditor began with charging Swartwout with the balance as it stood against him in the preceding account; then charged him with all the moneys which he had received in that quarter. Having given him credit for various sums paid into the Treasury, and paid to individuals under proper authority, he strikes a balance in favour of the United States, which is stated to consist of bonds uncollected, not due, bonds in suit, general bonds for spirits, wines, &c., and cash on hand.

In adjusting the account for the ensuing quarter, ending on the 30th of June, 1834, the auditor brought forward the entire balance standing against Swartwout in the last account, and then proceeded to charge and credit him as before.

In April, 1839, these accounts were re-stated by order of the first comptroller, so as to make the first account end on the 28th of March, 1834, instead of the 31st. The re-statement begins on the 28th of March, 1830, and runs through the whole four years of Eckford's suretiship, ending on the 28th of March, 1834, and shows a balance of cash due to the United States, of $486,455 24 cents. A certified copy of this paper is the transcript mentioned in the certificate of division of opinion in the court below.

*Legar*, attorney-general, on behalf of the United States.

*Lord* and *Silus Wright*, for the defendants.

The United States v. Eckford's Executors.

The points presented by the counsel, were—for the plaintiffs:

1. That this transcript is competent and legal evidence to show that Swartwout was, on the 28th March, 1834, indebted to the United States.

2. That the payments made by Swartwout, subsequent to the 28th March, 1834, should not be applied to discharge his debt incurred before, but to discharge that incurred after, that date.

On the part of the defendants the points were as follows:

I. Preliminary references:

1. The form of the collector's bonds is prescribed by law, and expressly assumes the past as well as prospective accountability of the collector. Act 1799, 3 U. S. Laws, 237.

2. The law obliged the collector, once in every three months, and oftener if required, to transmit his accounts, for settlement, to the officers of the Treasury. Act 1799, sec. 21, 3 U. S. Laws, 157; Act 1820, May 15, sec. 2, 6 U. S. Laws, 521.

The law also bound him, as a disbursing officer, to the same duty. Act 1823, Jan. 31, sec. 2, 7 U. S. Laws, 113.

3. The law required the officers of the Treasury Department to examine the accounts submitted, and to state, and certify the balances thereof. Act 1817, March 3, sec. 4, 8, and 9, 6 U. S. Laws, 199; and also the references under the preceding proposition.

4. The accounts rendered quarterly to the Treasury, there examined, corrected, and returned to the collector, are binding upon both parties as to all the items embraced in the accounts and included in the adjustment at the Treasury.

II. The balances in the quarterly accounts are to be taken as cash funds, or cash on hand; if so, every consideration, equitable as well as legal, requires them to be treated as the primary fund for subsequent payments, and these payments to be applied accordingly.

III. If the quarterly balances are presumed to be arrears, or defaulting balances, nevertheless the mutual rendering of accounts between the collector and the Treasury Department, to each other, was an appropriation of the payments to the charges, in the order of time in which they stand in those accounts.

IV. The sureties in posterior bonds of collectors of the customs have no equity to be taken into view, even in respect to an appropriation of payments, by mere implication of law.

Y

V. If the sureties on such posterior bonds should be deemed to have an equity against an application of payments, made after the date of their bonds, and during the period covered by it, to an antecedent balance, such application might have the effect to discharge such sureties; the United States cannot, for such a cause, without the consent of the anterior sureties, recall such application, made by accounts rendered, adjusted, and settled, according to law and long usage, and binding as between the United States and the collector.

VI. The re-statement of the account from 1830 to 1834, made at the Treasury in 1839, after the rendering and the settling, at the time of the quarterly accounts, was without authority of law, if it was to affect any previous appropriation of payments; if it was not, it was immaterial and irrelevant. It was in every view without authority of law.

*Legaré,* for plaintiffs.

1. Whether transcript is evidence.

2. As to the application of payments.

1. The act of 3d March, 1797, 1 Story, 464, declares that a transcript of the account shall be evidence. It is objected that this is not such, because the account is re-stated. But if an account has been once stated, why not state it again? Accounting officers are not judges. Need not re-state, unless some error. Time does not discharge sureties. United States *v.* Kirkpatrick, 9 Wheat. Government is not estopped if new evidence be discovered. 1 Domat, Public Law, title 6. An error may be corrected in a patent. Grant *v.* Raymond, 6 Peters, 241. Where a contract requires to be severed, court will sever it, as with rent. Co. Litt. 742, 215, A; Litt. sec. 244; 1 Roll's Abr. Apportionment, D. So in partnership cases. 3 Bro. Ch. Cases, 4, 44.

As to the second point.

If the opposite doctrine be correct, neither set of securities is responsible, because there is no default in the second term, and the first is paid. 1 Mer. 529, 572. If the debtor does not apply the payment himself, the court will apply it where the security is most precarious. 6 Cranch, 27. Civil law stated in 1 Poth. on Obligations, 338, ed. of 1826. The creditor may make the application. 4 Cranch, 317. A leading case is in 7 Cranch, 572, but

Justice Story dissents from it in 5 Mason's Rep. 82. Securities only liable for what was actually received during the term. 12 Wheat. 509. The responsibility must be severed. 1 Gilpin, 125.

*Lord*, for defendants :

Custom has been to apply payments as to time, unless something peculiar in the case. Bond of second sureties retrospective ; law required it to be so.. Sureties must have looked to this, backward as well as forward. Quarterly settlements are required by law. Act of 1799, c. 128, s. 21 ; May, 1820, c. 625, s. 2 ; Jan. 1823, c. 138.

Collector is obliged to retain money for various purposes; for example, to pay debentures, &c. The quarterly accounts are settlements, and bind the parties. Act of March 3, 1817, makes it the duty of the government to settle them. *Onus* is on the government. 1 McLean's Rep. 493 ; 9 Cranch, 230, 237. Presumption is that the accounting officers knew what the collector ought to keep on hand, and allowed him to retain it, aided by his reappointment. Suppose that it was a debt from Swartwout : has it been paid ? Rule is, that oldest debt is paid first, unless there be some equity. First, the debtor directs ; if he does not, the creditor does ; if neither does, the court makes the application. 6 Cranch, 9 ; 9 Wheat. 720 ; 4 Mason, 333. In December, 1834, this application was made. Oldest debt most likely to be lost, and policy of government is to throw balances on last securities. Debtor may make the application. 7 Cranch, 575 ; 9 Wheat. 720 ; 1 Mer. 604 ; 3 Sumn. 109 ; Gilpin, 125 ; 1 McLean, 493. The collector owed no debt until the government called for its money. Even if money had been borrowed from second surety and paid to government, the payment would have been good. The transcript is not a paper according to law, because the law meant a copy of what was done, not to make out something new.

*Wright*, on same side.

Debtor has a right to make the application. 2 Vern. 606. If he does not, the creditor may, but he must say before any controversy. 5 Taunt. 596. Either party having declared their intention is bound by it, and cannot change it without the consent of the other. 4 Cranch, 315. If neither party make the application, courts will consult the interests of creditor as well as debtor,

because they will apply it to a debt not bearing interest or not secured, rather than to one bearing interest or secured. In a running account the oldest credits are applied to the oldest debts, and so on, in order of time. 9 Wheat. 720; 2 Strange, 1194; 9 Mod. 427; 4 Mason, 33; 2 Marsh. 319; 1 Mer. 572— 611; 2 Barn. and Ald. 39; 3 Bingh. 71; 1 Wash. 128; 2 Brod. d Bingh. 7; 1 Stark. 122; 12 Wheat. 505; 1 Mason, 323; es, 239; Ambl. 55; 5 Mason, 82; 3 East, 484; 1 Bingh. 452; 2 Barn. and Cres. 265; 2 Maule and Selw. 18; 9 Cranch, 212; 1 Gilpin, 125, 106; Theobald, 221; 1 Law Library, 131. The power of the creditor and debtor over payments is the same where there are sureties as where there are none. 4 Mason, 333; 3 Bingh. 71; 9 Cranch, 212. The case in 1 Gilpin, 125, is not justified by either the case in Cranch or the case in Mason. In 1 McLean, 493, the officer was not a disbursing officer, and the bond was not retrospective. Case in 5 Peters, 373, not applicable.

Payments in this case were in fact and in law applied to extinguishment of former balances. Law required accounts to be settled quarterly. Every quarter Swartwout made the application, and it must bind him. So the government officers, also, by bringing down fresh balances. 3 East, 484; 9 Peters, 12; 1 Mason, 323; 14 East, 239; 8 Wend. 403.

Suppose a new person had been appointed who had debited himself with the balance, and the government had assented to it; would not this have discharged principal and surety? and how is it changed if the same man be reappointed?

*Legaré,* for plaintiffs, in reply.

The question is not now, whether a balance can be shown, but merely whether the evidence is legal; a cash balance is *prima facie* evidence of a debt. Every term of office is a separate responsibility, as to principal and sureties. No matter how the accounts are kept; the law of 1820 cuts through and severs them. Act of 1840, commonly called the Sub-treasury Act, declares the appropriation of public money a felony, and such an appropriation to pay an old debt is the basis of this defence. In 9 Wheat. the bond was given during an executive appointment. The sureties must see that their principals settle every four years. Swartwout was a bailiff or agent, not a debtor. 15 Peters, 432.

See 1 Jac. and Walk. 247. An agent who keeps the money in bank is presumed to be using it for his own benefit. 11 Peters, 61. A debtor paying a debt out of his own money has a right to apply it, but not paying it out of another man's money. He held the money of the government as a mere bailiff, and had no right to do any thing with it but hand it over.

Mr. Justice McLEAN delivered the opinion of the court.

This action was commenced in the Circuit Court for the southern district of New York, against the sureties of Swartwout, late collector of the customs at that city.

Swartwout was appointed collector by the President, the 1st of May, 1829; and continued to serve under such appointment until the 28th of March ensuing. On the 29th March, 1830, his nomination was sanctioned by the Senate, and he continued to serve in the office of collector four years. On the 29th March, 1834, he was again appointed by the President and Senate, for the term of four years.

Under each of the above appointments he gave bond and security, which, after reciting his appointment of collector, &c. provided: "Now, therefore, if the said Samuel Swartwout, hath truly and faithfully executed and discharged, and shall continue truly and faithfully to discharge, all the duties of the said office according to law, then," &c.

The bond on which this suit was brought, is dated the 22d June, 1830.

A transcript of the accounts of Swartwout from the commencement to the termination of his service as collector, was given in evidence, and also a transcript which purports to state the responsibilities arising under the second term of his service.

At the commencement of his second term, a large balance was charged against him, arising under the previous term; and at the commencement of the third term, a balance was charged, as arising under the second term.

In the course of the trial the two following points were raised, on which the judges were opposed in opinion, and the questions were certified to this court.

"1. Whether the said transcript from the books and proceedings of the Treasury, given in evidence, on the part of the United

States, to show the indebtment of said Swartwout, on the 28th of March, 1834, on which day the second term of office of said Swartwout expired, was in this case competent and legal evidence for that purpose."

" 2. Whether the payments made by said Samuel Swartwout, subsequently to the said 28th day of March, 1834, should be applied to the discharge of his indebtment existing on the said 28th day of March, 1834, or accruing during his said second term of office, or whether such payments should be applied to the discharge of his indebtment accruing after that time."

By the act of the 2d of March, 1799, collectors of the customs are required, " once in every three months, or oftener if directed, to transmit their accounts for settlement, to the officer or officers whose duty it shall be to make such settlement."

From the transcripts in this case, and the deposition of the late comptroller, it appears that until after 1838, the accounts of collectors of the customs were kept at the Treasury in one continued series of debits and credits, without regard to the terms of the appointments or the different sureties involved.

By the act of May 15th, 1820, the term of appointment of collectors of the customs and other officers named, was limited to four years. Prior to that act, such appointments were made without any limitation as to time, except the pleasure of the President.

The 2d section of the act of 3d March, 1797, provides, that, " in every case of delinquency, where suit has been, or shall be, instituted, a transcript from the books and proceedings of the Treasury, certified by the register, and authenticated under the seal of the department, shall be admitted as evidence;" &c. By the 11th section of the act of the 3d March, 1817, the auditors of the War and Navy Departments were authorized to certify accounts the same as the register.

Before the points certified are examined, we will consider the principles involved in the case.

Under the act of 1820, collectors can only be appointed for four years. At the end of this term the office becomes vacant, and must be filled by a new appointment. And each collector is required to give bond and security on entering upon the duties of his appointment, in such sum as shall be designated.

The United States *v.* Eckford's Executors.

That the collector is responsible for all moneys received by him and not accounted for, without reference to the official terms he may have served, or to any bonds he may have executed, is undoubted. But this is not the case with his sureties. They are responsible only for the faithful performance of his duties, for the term of his appointment. The condition of the bond is, that he hath performed his duties faithfully, and that he shall continue to perform them. But this condition does not extend to his delinquencies under any other appointment.

The bond in question is dated the 22d of June, 1830, and relates to the 29th of March preceding, at which time the term of the collector commenced; and its obligation extends to the 29th of March, 1834. That the sureties are not bound beyond this period, is too clear for controversy. As regards their liability, it is the same as if Swartwout had served only the term covered by their bond. For the faithful performance of his duties under the executive appointment, which preceded the above term, Swartwout gave bond and security; and also, under the new appointment for four years, which he served from the 29th March, 1834. So far as the sureties are concerned, these terms are as separate and distinct as if a different individual had filled each one of them.

The extent of the obligation of the sureties being stated, we are brought to the inquiry, "whether the transcript, given in evidence on the part of the United States to show the indebtment of Swartwout, on the 28th of March, 1834, was legal evidence."

The transcript is certified in the form required by the act of Congress. In the argument no objection was stated, as to the mode of its authentication. But the re-statement of the account by the Treasury officers, showing the liabilities incurred by the collector during the term for which the defendants are bound as sureties, is objected to.

The collector is also a disbursing officer. He is charged with the bonds taken for duties, and is credited for sums paid into the Treasury, and also for drawbacks and other disbursements incident to his office, or which have been made under the order of the Treasury Department. But from the continuous mode of keeping his accounts, without regard to the terms he may have served, the defalcation within any one term does not appear.

. At the commencement of each term an amount is charged against the collector, but it may be composed of bonds in suit, not due, and deposited specially, as is found by the items first charged in the general transcript, amounting to more than eleven millions of dollars. The balance charged, therefore, at the commencement of any quarter or term, does not show that the collector is in default. He may, indeed, stand charged with money actually paid into the Treasury by him, but for which he has received no credit, as what is called a covering warrant has not been issued. Until this shall be done the credit cannot, by the usage of the department, be given.

To meet the necessary disbursements, a sufficient sum of money should always be under the control of the collector. And it is understood to be the usage of the collector, under the sanction of the department, to retain such sum.

From this, it appears that the general transcript affords no sufficient data on which to charge the sureties for any term of office, where, as in the present case, the same person has served as collector several terms.

It is contended that the duties of the Treasury officers charged with the settlement of these accounts are in their nature judicial; and that when an account is once settled it is conclusive on the government, and can only be opened for correction by a suit in court. That in the present case, as credits were given in the account current, which more than paid the moneys received within the four years under examination, the sureties must stand discharged of all liability. And, that although these payments were in part made from moneys received, after the expiration of the above term, the credit must stand as entered.

If this be a sound argument, by the mode of keeping these accounts in the Treasury Department, all sureties of collectors, except those for the last term, are discharged. And it is supposed that this construction would impose no hardship or injustice on the last securities; that, as the bond binds them for the past as well as the future conduct of the collector, they must inquire what amount is charged against him at the commencement of the term for which they are bound.

Now the retrospective obligation of the bond is as much limited by the term of the new appointment as the prospective. And in

this view it would be as logical and just to hold that the sureties are liable for defalcations after the expiration of the term as for those which occurred before its commencement. There is no such condition in the instrument. It recites the new appointment, and, by consequence, limits the obligation to the term of office fixed by law.

The rule as to the appropriation of payments by debtor or creditor in the ordinary transactions of business, is earnestly relied on as applicable to the present case. And all the leading authorities on this subject are referred to. In the case of Devaynes *v.* Noble, &c., 1 Mer. 606, the doctrine which governs the application of payments was elaborately considered. But the applicability of this doctrine is not admitted. We think the rule established by this court in the case of the United States *v.* January and Patterson, 7 Cranch, 572, is the true one. In that case the court say : " The debtor has the option, if he think fit to exercise it, and may direct the application of any particular payment at the time of making it. If he neglects to make the application, the creditor may make it ; if he also neglects to apply the payment, the law will make the application." But the court add, " A majority of the court is of opinion that the rule adopted in ordinary cases is not applicable to a case where different sureties under distinct obligations are interested."

The Treasury officers are the agents of the law. It regulates their duties, as it does the duties and rights of the collector and his sureties. The officers of the Treasury cannot, by any exercise of their discretion, enlarge or restrict the obligation of the collector's bond. Much less can they, by the mere fact of keeping an account current, in which debits and credits are entered as they occur, and without any express appropriation of payments, affect the rights of sureties. The collector is a mere agent or trustee of the government. He holds the money he receives in trust, and is bound to pay it over to the government as the law requires. And in the faithful performance of this trust the sureties have a direct interest, and their rights cannot be disregarded. It is true, as argued, if the collector shall misapply the public funds, his sureties are responsible. But that is not the question under consideration. The collector does not misapply the funds in his hands, but pays them over to the government, without any spe-

cial direction as to their application. Can the Treasury officers say, under such circumstances, that the funds currently received and paid over shall be appropriated in discharge of a defalcation which occurred long before the sureties were bound for the collector, and by such appropriation hold the sureties liable for the amount? The statement of the case is the best refutation of the argument. It is so unjust to the sureties, and so directly in conflict with the law and its policy, that it requires but little consideration.

If the collector be in default for a preceding term, it is the duty of the Treasury Department to require payment from him and his sureties for that term. To pay such defalcation out of accruing receipts during a subsequent term, even with the assent of the collector, would be a fraud upon the sureties for such term. The money in the hands of the collector is not his money. Without a violation of his duty, he cannot appropriate it as such. He pays it over in the performance of his duty—the duty which the sureties have undertaken that he shall faithfully perform. And shall the sureties not be exonerated? The collector has done all that they stipulated he should do. How, then, can they be made responsible? It is contended that their responsibility arises, not from the default of the collector, but from the appropriation of his payments by the Treasury. This, at least, is the fair result of the doctrine advanced. For, if such appropriation is properly made by the Treasury, in payment of a defalcation of the collector before the commencement of the current term, it must follow that the sureties for such term are responsible for the amount thus paid.

The government must show the amount of the defalcation of the collector during the term for which the defendants were sureties, to charge them; and this is not done on the face of the general transcript. It is necessary, therefore, to have a re-statement of the account for this purpose: This re-statement does not falsify the general account, but arranges the items of debits and credits so as to exhibit the transactions of the collector during the four years in question. Whether this be done by depositions, or in the form of a transcript, may not be material.

We think that the transcript or re-statement of the account, as explained by the depositions, was competent evidence to the jury.

This statement, as appears from the deposition of Tarbutt, is defective in not giving all the credits to which the collector was entitled; but as it relates to the matter in controversy, it is evidence. The jury will determine what effect it shall have.

The amount charged to the collector, at the commencement of the term, is only *prima facie* evidence against the sureties. If they can show by circumstances or otherwise, that the balance charged in whole or in part had been misapplied by the collector prior to the new appointment, they are not liable for the sum so misapplied. If the sum charged consists of duty bonds, the defendants may show that the bonds were never paid. These remarks apply to the sureties under every new appointment of the collector, and to the balance charged against him.

On the 29th of March, 1834, a new official term of Swartwout commenced, and new securities were given. On that day a large apparent balance was due to the government by him. Now the inquiry should be, of what did that balance consist? Did it arise from a misapplication of the public money during the preceding term? If so, the sureties of the preceding term are liable for the amount thus misapplied. But if there was no misapplication of the public money by the collector, and he paid over to the government, or to its order, all the moneys he received during the official term for which the defendants were his sureties, however such payments may have been appropriated by the Treasury, the sureties are discharged.

In answer to the question, "whether the payments made by the collector subsequently to the 28th of March, 1834, should be appropriated in discharge of his indebtment on that day," we say, that so far as such payments were made of moneys accruing and received in the subsequent term, they should not be so applied. But so far as payments were made in the subsequent term of moneys received on duty bonds or otherwise, which remained charged to the collector, as of the preceding official term, such payments should be appropriated in discharge of the indebtment of the collector for that term. The sureties are only responsible for a misapplication of the public money during the four years preceding the 29th of March, 1834. And of course the extent of this responsibility must be shown by the government. As before remarked, the Court consider the official terms as distinct and

separate, in regard to the sureties, as if different persons had served in the three terms specified; that the legal responsibilities of the sureties are not and cannot be affected by any action of the Treasury Department. If liable, the sureties are made so by their contract; and the government, being a party to that contract, cannot, without the consent of the defendants, change its legal or equitable effect.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the southern district of New York, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this Court,

1st, That the transcript from the books and proceedings of the Treasury, given in evidence on the part of the United States, to show the indebtedness of Samuel Swartwout on the 28th day of March, 1834, on which day the second term of office of said Swartwout expired, was, in this case, competent and legal evidence.

2d, That the payments made by said Samuel Swartwout subsequently to the said 28th day of March, 1834, should be appropriated in discharge of his indebtedness on that day, so far as said payments were made, in the subsequent term, of moneys received on duty bonds or otherwise, which remained charged to the collector as of the preceding official term; but not where such payments were made of moneys accruing and received in the subsequent term.

Whereupon it is now here ordered and adjudged by this Court, that it be so certified to the said Circuit Court.