## THE STATE OF TEXAS vs. W. B. MIDDLETON ET AL.

### SUPREME COURT, AUSTIN TERM, 1882.

*Collector of taxes—Suit on official bond—Erroneous appropriation of payments by Comptroller.*—Taxes collected for the year 1876 and paid by the collector of taxes to the Comptroller were appropriated by the latter to the payment of a defalcation of the collector during a previous term of office, and under a different official bond.

*Held,* That such payment by the collector cannot be appropriated by the Comptroller to the discharge of a defalcation which occurred before the sureties became bound, and by such appropriation hold the sureties liable for the amount. To pay such defalcation out of accruing receipts during a subsequent term, even with the assent of the collector, would be a fraud upon the sureties for such term. Rule in United States vs. Eckford's Executors (1 Howard, 261), cited and adopted.

Any appropriation, either by the direction of their principal or by the Comptroller undirected, which would deprive sureties of protection, by applying a fund for which they are responsible to the benefit of other and former sureties of their principal, would be a violation of their right under their contract, which, without their consent, cannot be permitted.

Appeal from Travis county.—Opinion by Stayton, J.—This action was brought by the State of Texas against W. B. Middleton, collector of taxes for Leon county, and the sureties upon his bond, to recover the sum of $5868.37 on his account as collector of taxes due the State for the year 1876.

W. B. Middleton having died pending the suit, it was dismissed as to him and prosecuted to finnal judgment against his securities.

The cause was tried by a jury, which, under the instructions of the court, made special findings, upon which the court rendered a judgment against the defendants for the sum of $1159.73 with interest, from which the State appealed, and both parties have assigned errors.

The jury found that the collector had collected of the taxes due for the year 1876 the sum of $4151.90, and that the same had been paid into the State treasury, but that it had been applied by the Comptroller upon the accounts of the collector for the

years 1874 and 1875, he having been the collector of
taxes for Leon county during those years, and being in
arrears for those years about $12,000. It was, in effect, found that
the collector had none of the money by him collected for the years
1874 and 1875 in his hands on the second day of May, 1876, at
which time he executed the bond upon which the present suit is
based. No direction was given by Middleton as to how the
$4151.90 should be appropriated, and it does not appear that the
Comptroller knew from what source the same was derived.

Although the sum so paid into the treasury of the State had
been appropriated by the Comptroller to the accounts of the collec-
tor for the years 1874 and 1875, the court applied the same a credit
upon his account for the year 1876, and this is assigned as error by
the State.

It is claimed by the State's counsel that as no directions were
given by the collector to the Comptroller at the time the money
was paid into the treasury as to what account the same should be
appropriated, that the appropriation made by the Comptroller must
stand, he having no notice at the time the appropriation was made
that the fund arose from taxes collected for the year 1876, after the
execution of the bond sued upon.

There has been some contrariety of decisions upon this question,
but it is believed that by the great weight of authority, as well as
upon principle, the question must be decided adversely to the posi-
tion assumed by the State.

The rule for the appropriation of payments between parties act-
ing in their own right is well settled, and is, that the debtor may
direct in what manner the money paid by him shall be appropriated,
and that if he fails to do so, that the creditor may make the appro-
priation, and that in the absence of an appropriation by either the
debtor or creditor, the law will appropriate it as may be just be-
tween the parties, having reference to the character of the indebt-
edness and all the circumstances.

It is not, however, believed that this rule obtains between the
collecting officers of the State and their sureties and the auditing
or accounting officer for the State.

The sureties upon the collector's bond for the years 1874 and
1875 were not the same as on the bond sued upon.

The rule is thus stated by the Supreme Court of the United
States: "A majority of the court is of opinion that the rule

adopted in ordinary cases is not applicable to a case where different sureties under distinct obligations are interested. The treasury officers are the agents of the law. It regulates their duties, as it does the duties and rights of the collector and his sureties. The officers of the treasury cannot, by any exercise of their discretion, enlarge or restrict the obligation of the collector's bond. Much less can they, by the mere fact of keeping an account current, in which debits and credits are entered as they occur, and without any express appropriation of payments, affect the rights of sureties. The collector is a mere agent or trustee of the government. He holds the money he receives in trust, and is bound to pay it over to the government as the law requires. And in the faithful performance of this trust the sureties have a direct interest, and their rights cannot be disregarded. It is true, as argued, if the collector shall misapply the public funds his sureties are responsible; but that is not the question under consideration. The collector does not misapply the funds in his hands, but pays them over to the government, without any special directions as to their application. Can the treasury officers say, under such circumstances, that the funds currently received and paid over shall be appropriated in discharge of a defalcation which occurred long before the sureties were bound for the collector, and by such appropriation hold the sureties liable for the amount ? The statement of the case is the best refutation of the argument. It is so unjust to the sureties, and so directly in conflict with the law and its policy, that it requires but little consideration.

"If the collector be in default for a preceeding term, it is the duty of the Treasury Department to require payment from him and his sureties for that term. To pay such defalcation out of accruing receipts during a subsequent term, even with the assent of the collector, would be a fraud upon the sureties for such term. The money in the hands of the collector is not his money. Without a violation of duty he cannot appropriate it as such. He pays it over in the performance of his duty—the duty which the sureties have undertaken that he shall perform faithfully. And shall the sureties not be exonerated ? The collector has done all that they stipulated he should do. How, then, can they be made responsible? It is contended that their responsibility arises, not from the default of the collector, but from the appropriation of his payments by the treasury.

This, at least, is the fair result of the doctrine advanced. For, if

such appropriation is properly made by the treasury, in payment of the defalcation of the collector, before the commencement of the current term, it must follow that the sureties for such term are responsible for the amount thus paid." (The United States v. Eckford's Executors, 1 How., 261.) We have quoted largely from the opinion in the above cited case, because it is believed to state clearly the true doctrine upon the question now under consideration, and to state clearly the only true ground upon which the liability of the sureties depends.

The same principles are announced in the following cases: Jones vs. The United States, 7 How., 688; The United States vs. January, 7 Cranch, 575; Meyers vs. The United States, 1 McLean, 496; Pickering vs. Day, 2 Del. Chan. Rep., 367; Boring et al. vs. Williams, Treasurer, 17 Ala., 525; Porter vs. Stanley, 47 Maine, 518. There are cases in which it has been held that the want of notice to the officers of the treasury department of the source from which money came will render valid and binding the appropriation of the same to an indebtedness of the collecting officer, accruing prior to the time the liability of the sureties whose bonded obligation is sought to be enforced attached, even though the money so appropriated was collected during a second term of office, and for which alone such sureties are liable, and even though such appropriation goes to liquidate an indebtedness of the collecting officer incurred during a former term of office, and for which other persons are sureties. Among these are the cases of Chapman et al. v. Commonwealth, 25 Grattan, 742; Lyndon v. Miller, 36 Vermont, 329, but in neither the reasoning nor in the principles announced in those cases can we concur; and we are of the opinion that the court did not err in appropriating the sum of $4151.90, collected of the taxes of the year 1876, to the discharge of so much of the collector's indebtedness for taxes for that year.

On the trial the defendants introduced in evidence the following document:

No. 111.—Department of Education.—$4758.07.—State of Texas, Austin, November 17, 1876.—To the County Treasurer of Leon county: Sir—Your county is entitled to forty-seven hundred and fifty-eight and .07 dollars, the same being the amount apportioned to your county for support of public free schools for the scholastic year ending August 31, 1877. The tax collector is authorized to pay to the county treasurer this amount out of any State funds in

his hands, in whole or by installments, and the same will be received as a credit in settlement with the Comptroller.

RICHARD COKE, Governor,

˙STEPHEN H. DARDEN, Comptroller,

................, Sec. of State,

Board of Education.

Stephen H. Darden, Comptroller, attested by O. N. Hollingsworth, Secretary Board of Education. Endorsed: T. A. Womack, Treasurer Leon county.

They proved that it had been returned to the Comptroller by W. B. Middleton, and was, on the third day of January, 1877, placed to his credit by the Comptroller on his accounts for the years 1874 and 1875.

They then offered to read in evidence to the jury the following instrument in writing, with the endorsements thereon, viz:

$4758.07.—Centreville, Texas, December 23, 1876.—Received of T. A. Womack, County Treasurer Leon county, draft No. 111, for the sum of four thousand seven hundred and fifty-eight and .07 dollars, being the amount apportioned to Leon county for support of public free schools for scholastic year ending August 31, 1877, which amount I obligate myself to collect and pay over as soon as can be collected out of the taxes now due and owing.

W. B. MIDDLETON, Sheriff Leon County.

[Endorsed.]

December 23, 1876.—Received from W. B. Middleton on the within draft or receipt, $356.74.

T. A. WOMACK, Treasurer Leon County.

Centreville, January 13, 1877.—Received of W. B. Middleton on within amount, $700.

T. A. WOMACK, Treasurer Leon County.

February 5, 1877.—Received of W. B. Middleton on the within amount, $600.    T. A. WOMACK, Treasurer Leon County.

February 16, 1877.—Received of W. B. Middleton on the within amount, $200.    T. A. WOMACK, Treasurer Leon County.

April 3, 1877.—Received of H. B. Pruitt on the within named amount, $458.67.    T. A. WOMACK, Treasurer Leon County.

The special findings of the jury show that no directions were given by the collector in regard to the appropriation of the sum evidenced by the draft above set out, and that the several sums endorsed upon the receipt which was given to the county treasurer

of Leon county by the collector were paid at their several dates with money collected of the taxes of the year 1876, except the sum of sixty-five dollars, which was collected from the taxes due for the years 1874 and 1875, and that the administrator of the estate of Middleton, after his death, paid to the county treasurer, in county scrip, $1221.33 received for taxes for the year 1876, and a like sum in county scrip received for taxes for the years 1874 and 1875.

The court allowed as a credit to the defendants the sum of $356.74, the same being the sum paid by the collector on the draft in favor of the county treasurer on the same day the draft was indorsed to the collector, and refused to allow the residue of the payments made as above stated.

The State assigns as error the allowance of the credit of $356.74, and the defendants assign as error the refusal of the court to allow as credits the other sums indorsed as payments on the receipt given by the collector to the county treasurer.

What we have already said in regard to the appropriation of payments is as applicable to the payment made by the collector on the day he received the draft from the county treasurer, as to payments made in money directly to the State treasury, and that payment was correctly appropriated by the court.

The court held that the payments made to the county treasurer, after the draft was passed to the credit of the collector on his accounts for the year 1874 and 1875, by the Comptroller, prohibited the appropriation of taxes other than for those years to the liquidation of the obligation which the collector had made to obtain the draft.

This ruling is based upon the theory, that the time when the appropriation was made by the Comptroller, and state of the accounts then existing between the collector and the county treasure, should control the right of the parties, rather than that the particular fund which was used by the collector to pay the draft should control.

This, we think, was error, for the contract of the sureties was in effect, that the collector would pay into the State treasury, either direct or indirectly (and the payment to the county treasurer was such a payment), all funds which he might collect, which, under the law, was so to be paid. If that is done, there can be no breach of their obligation, and any payment made out of funds which they

have contracted shall be paid into the treasury by their principal, is a payment which they are entitled to have so appropriated as to relieve them to that extent from their obligation; and any appropriation, either by the direction of their principal, or by the Comptroller undirected, which would deprive sureties of such protection by applying a fund for which they are responsible to the benefit of other and former sureties of their principal, would be a violation of their rights under their contract, which, without their consent, cannot be permitted.

Their contract is, that the money for which they are responsible shall be paid into the State treasury, but they do not contract that the proper appropriation of it shall be made by the Comptroller when there; but there is an implied contract or duty upon the part of the government that when it is paid into the treasury, it shall be appropriated to the discharge of their obligation, and not that it may be appropriated in discharge of the obligation of some other person.

If the collector had borrowed money upon his own personal credit, or upon the credit which the indorsements of his friends might have given him, and had paid the same into the State treasury, without any direction as to its appropriation, the Comptroller might have properly appropriated the same to the accounts of the collector for the years 1874 and 1875, for money so obtained would have been the money of the collector; that paid to the county treasurer of Leon county was not the money of the collector, but was the money of the State, which, when paid to the county-treasurer was paid in performance of the very duty which his sureties had contracted he should perform, and which being performed, to that extent, must inure to the benefit of his sureties, and relieve him and them from default.

Without default upon the part of their principal, in regard to that which they have contracted he shall do, there can be no liability upon the part of the sureties.

The liability of sureties cannot be made to depend upon the appropriation which the Comptroller may make of money which has been properly paid into the treasury; otherwise his discretion, instead of the contract which parties have made with the State, will become the measure of their liability. (1 How., 262.) The contract between the county treasurer and the collector was that the collector would pay to him the amount of the draft, not out of his own funds, but out of funds to be collected by him for the State.

The language of the contract was, "which amount I obligate my-self to collect and pay over as soon as can be collected out of the taxes now due and owing." The law contemplated partial pay-ments as the collector should have money in hand from collection of taxes due the State. (Acts 1876, 204.)

The treasurer of the county violated his duty in delivering the draft to the collector until it had been fully paid. (Acts 1876, 204.) But this cannot affect the right of the sureties to have the proper appropriation made of that which was paid with funds for which they were responsible.

The court should have credited the defendants with the sums of money paid to the county treasurer by the collector, or his succes-sor, upon the draft of date of November 17, 1876, less the sum of $65, which was paid out of moneys received on taxes of the years 1874 and 1875, but they were not entitled to credit for the sum of $1221.33, paid to the county treasurer on the draft in county scrip, collected on taxes of the year 1876, for there was no authority to receive the same. The draft was only payable in such funds as could have been received into the State treasury. County scrip could not have been so received, nor could it have been used for the school purposes, for which the draft was drawn; nor were the defend-ants entitled to a credit for the $300 paid into the treasury by one of the sureties of the collector, he not having directed it to be appro-priated to the discharge of the obligation upon which he was a surety. It was a mere loan of money, so far as the record shows, to the collector.

We are not unmindful that there may be a great difficulty in properly appropriating sums of money which may come to the State treasury in cases where a person has served several terms as collector of taxes, with different sureties for the several terms; but, as the statutes stand, the accounts of collectors may be speedily closed and adjusted; but if this were not so, it would be no sufficient nor good reason for placing burdens upon those who have never contracted to assume them, simply as a matter of public convenience.

It appears from the special findings, that the collector, after he gave the bond sued upon in this case, collected, of the taxes due for the years 1874 and 1875, the sum of $1065, which is not, in terms, as we understand the pleadings, embraced in the present suit.

The cause will be remanded, that this item, if the State see proper to do so, may be embraced in the pleadings, and that a full

adjustment of all matters between the parties may be had without resort to another suit.

For the causes herein indicated, the judgment of the court below is reversed and the cause remanded.