## UNITED STATES v. MORGAN and others.

*(District Court, S. D. New York. June, 1886.)*

1. OFFICIAL BOND—SURETIES—DISBURSING OFFICERS—SPECIFIC APPROPRIATIONS —UNAUTHORIZED PAYMENTS—MINGLING ACCOUNTS—DEBITS CANCELED.

   Disbursing officers of the treasury are not authorized to draw, nor the treasurer to pay, from the specific appropriations, any other sums than those authorized by law on account of the appropriations respectively.

2. SAME—CASE STATED.

   M. was disbursing officer, as chief of the bureau of accounts, in the department of state. As such, he gave a bond, with the defendants as sureties, for the faithful discharge of his duties. Moneys for specific purposes, appropriated by congress, were placed to his credit by the treasurer, during several years. M., during the same time, received considerable moneys monthly for issuing passports, which was not a part of his official duty as disbursing officer, and for which the sureties were not liable. M. was in the habit of using current receipts from passport moneys to pay current claims upon his treasury account, and at the end of the month he drew upon his treasury account in order to pay to the treasury the amounts due to the government for passport moneys. Upon M.'s death, in January, 1884, his treasury account was found about $17,000 short, and during the period covered by these accounts he had drawn from it about $29,000 for paying into the treasury his passport moneys. Each draft, and a letter accompanying it, stated that purpose, and the treasurer accordingly debited the appropriations account, and credited the same to M. in the passport account. *Held,* that the drafts on the appropriations account to pay passport moneys were unauthorized, illegal, and void; and no change in the actual money in the treasury appearing, *held,* that the debits charged against the appropriations account were unauthorized; that the sureties were entitled to have them canceled; and the accounts being readjusted accordingly, and there being no deficit in the appropriations account, a verdict was directed for the defendants

Suit on an Official Bond.

*G. E. P. Howard,* Asst. U. S. Atty., for plaintiff.

*Geo. Bliss, Jr.,* for defendants.

In directing a verdict for the defendants, the court ruled substantially as follows:

BROWN, J. The defendants in this action, who are the sureties in Mr. Morgan's bond for "the faithful discharge of his duties," are answerable only for his acts as a disbursing agent, as chief of the bureau of accounts in the department of state. Besides performing this duty, Mr. Morgan, at the same time, by the direction of the secretary of state, received moneys for the issuing of passports, to the amount of from eleven to fifteen hundred dollars per month. His acts in the latter capacity, it is conceded, were independent of his duties as disbursing clerk, and the sureties in his bond are in no way answerable for any misappropriation of the passport moneys.

As disbursing clerk, he had charge of, and disbursed, certain funds appropriated by congress, from time to time, for specific purposes. For the amounts thus appropriated warrants were drawn by the secretary of the treasury upon the treasurer of the United States, directing that the amounts appropriated on account of these particular funds be placed to the credit of Mr. Morgan, for that purpose, on

the books of the treasury. Such credits were accordingly given him by the treasurer, from time to time, from May, 1875, until Mr. Morgan's sudden death, in January, 1884.

Under the provisions of Rev. St. §§ 3620-3623, Mr. Morgan was not authorized to draw, nor the treasurer to pay, from these appropriations or credits, any sums other than those authorized by law, on account of the appropriations respectively. Each sum placed to his credit, under the warrants above referred to, constituted a specific fund, which could not be legally appropriated to any other purpose than that authorized by law.

The accounts of Mr. Morgan were made up, from time to time, by the accounting officers of the treasury, from the vouchers returned to them by him, as respects each fund. These accounts, from 1882 to 1884, cover 11 different appropriations, upon which, after his death, a total deficit was ascertained, amounting to $16,860.07, for which the defendants, as sureties, have been sued. In the various balances struck before his death, from time to time, no account was taken of any moneys that might be then remaining in the treasury undrawn and applicable to these accounts. The balance as to each fund, as it appears on the treasury accounts, represents, therefore, only the amount of the appropriation that appeared to be unexpended and then in Mr. Morgan's hands. There is no evidence that any demand was ever made upon him to pay over these balances, or to cover the same into the treasury. In the final account, made up by the treasury officers after Mr. Morgan's death, however, credit was given to him for what moneys were found remaining in his appropriations account with the treasurer; and also for the sum of $5,873.83 cash found in his safe, after first applying $1,279 to the account of passport moneys and proceeds from the sales of Statutes, which his memorandum showed to be due to the government on the latter accounts for the current month.

The evidence shows that Mr. Morgan did not deposit in his appropriations account with the treasurer any of the moneys received from passports, or the sales of Statutes. The evidence indicates that his practice was frequently to make use of the current passport moneys in his hands to pay claims upon him as disbursing officer, instead of drawing upon the specific appropriation in the treasury account for the latter purpose. Then, at the end of each month, he would draw upon his account with the treasurer a check for the amount of money received from passports and the sales of Statutes during the current month, making this check payable also to the treasurer; and he would send this check to the treasurer, with a letter stating that the check was drawn in payment of passport moneys received by him for the current month for deposit with the treasurer. The check, also, on its face, showed the same purpose. These checks were thereupon debited against Mr. Morgan in the appropriation account. The amount of the checks for passport moneys thus debited against his

account as disbursing officer, during the 18 months in which the balance now sued for accrued, amounted to about $29,000. If those debits were not lawfully made, or if the defendants, as sureties for Mr. Morgan as disbursing officer, are entitled to have those debits canceled, so far as they affect the defendants, then the accounts will show nothing due from him as disbursing officer, and the plaintiffs would not be entitled to recover in this action.

From what has been said, it is manifest that Mr. Morgan did not keep distinct his transactions as respects the two classes of funds, as required by law. He used passport moneys in his possession to pay legal demands upon the other funds in the treasury, and he afterwards drew checks upon the specific appropriations account, for the purpose of paying into the treasury the passport moneys which he was bound to turn over to the government. This course of procedure was unauthorized and illegal. No harm, indeed, would come from it, and no loss to any one, provided the checks thus drawn on the treasurer were no greater than the amount of cash received from passport moneys that he had already applied in payment of claims on him as disbursing officer. But the whole balance now claimed against these sureties arises in consequence of the fact that these amounts were not the same, and because his checks on the treasurer were so much in excess of the amount of passport moneys that he had applied upon the appropriations account. Apparently, he misapplied a certain amount of passport moneys to his own use, and drew upon his appropriations account to make good to the treasury the passport deficiency.

The drawing of these drafts on the treasurer was doubtless a violation of the terms of the defendants' bond for "the faithful discharge of his duties as disbursing officer." And if, by means of these drafts, the United States had been deprived of any moneys, or had sustained any pecuniary damage, or any moneys had, in the language of Mr. Justice BLATCHFORD, in the case of *Morgan* v. *Van Dyck*, 7 Blatchf. 147, "been withdrawn from the custody of the treasurer," and thus lost to the government, the defendants would have been answerable for the deficiency shown. The evidence is clear, however, that there was no withdrawal. The balances in the treasury were unchanged. Precisely the same money was in the treasurer's hands after these drafts as before. There is no evidence that, up to the time of the commencement of this action, there had been any change as respects the amount of moneys in the treasury by reason of these drafts, or of the debits made in consequence of them against Mr. Morgan's account as disbursing officer.

The drafts were clearly unlawful. The debits based on them were equally unlawful. On their face, the draft and the letter showed this illegality. The letters stated explicitly that Mr. Morgan had collected the amount named "during the current month for passport moneys," and that he deposited them with the treasurer; that is, by

means of the draft inclosed. But, in fact, Mr. Morgan deposited nothing. He added nothing to the money in the treasury. Instead of depositing money, or its equivalent, as he was bound to do, he unlawfully drew a check against his disbursing account, which it was illegal to appropriate to any such purpose. The treasurer thereupon debited one account and credited the other. The only change made by those acts was a matter of book-keeping. The moneys in the treasury remained precisely as before. The amount now sued for has never been withdrawn from the treasury. It was illegally debited against the disbursing officer's account. In the eye of the law, this illegality was known to the treasurer; and, as against Mr. Morgan's sureties, who are not liable for the passport moneys, such a debit must be treated as a void act.

In the case of different sets of sureties for the same officer, during different terms of office, it has been repeatedly adjudicated by the supreme court that, by no act of the officer, or of the treasury department, or of both combined, can official moneys, collected by the officer and paid into the treasury department during one term of office, be appropriated to the accounts of the other term, to the prejudice of the sureties for the respective terms. *U. S.* v. *January*, 7 Cranch, 572, 575; *U. S.* v. *Eckford*, 1 How. 250, 262; *Jones* v. *U. S.*, 7 How. 681, 688. The same was held also in the recent case of *State* v. *Middleton*, 57 Tex. 185. Murfree, Off. Bonds, § 291.

The same principle is applicable to the present case. The evidence shows that there is no deficit and no defalcation as respects the disbursing accounts, for which alone the defendants became liable as sureties. The deficit is solely in the passport funds, for which the defendants never became sureties. The government having taken no security for Mr. Morgan's acts as respects passport moneys, stands itself as its own surety for his acts in regard to those moneys. The situation is the same as though there were two sets of sureties,—the government, for the passport funds; and the defendants, for the disbursing account. Mr. Morgan, by his drafts on the treasurer, undertook to appropriate a part of the disbursing account to the discharge of his independent obligations for passport moneys. The treasurer concurred in the act with full knowledge of the facts. But he parted with no money. He only made the corresponding entries in the books. The act was a fraud on the defendants, as sureties, and illegal as respects all who concurred in it. Having parted with nothing, the United States, in making up its account of the balance due on Mr. Morgan's disbursing account, cannot claim the benefit of those illegal debits, to the prejudice of the sureties. The latter are entitled, as in the case of *U. S.* v. *Eckford, supra,* to have the disbursing accounts restated, and the illegal debits canceled. Upon such a readjustment, the evidence is clear that nothing would be owing on the disbursing account; and a verdict should therefore be directed for the defendants.