*279
 
 Day, J.
 

 The original action herein was upon an indemnity or fidelity bond issued by plaintiff in error to insure the defendant in error from loss by reason of the defalcation of certain of its employes. The American Vitrified Products Company, with its principal office at Akron, Ohio, had a number of factories and branches in various parts of the country. Carl E. Cook was cashier of the factory and sales office at Jackson, Mich., and on March 1, 1924, was so' employed, and had been for many years prior thereto, his employment more than covering the period from December 1, 1922, to June 2, 1924. The indemnity bond sued on herein was executed February 9, 1924, and became effective March 1, 1924. Said bond provided that the insured was protected against “such pecuniary loss of money, funds or other personal property (including that for which the insured is responsible) as the insured shall sustain by any act or acts of fraud or dishonesty (including forgery, theft, embezzlement, wrongful abstraction or misapplication).” Cook’s employment was covered in the policy up to $5,000.
 

 The record discloses that Cook, for a considerable period, had committed acts of fraud and dishonesty against his employer, the American Vitrified Products Company, and for the period from December 5, 1922, down to June 2, 1924, when his accounts were checked, there appeared a shortage of over $4,000. On June 9, 1924, Cook committed suicide. His method of defalcation was as follows: The Products company maintained a $1,500 deposit, for sundry expenses, in the People’s National Dank of Jackson, Mich., upon which account Cook was
 
 *280
 
 authorized to check when said checks were countersigned by Walker, the office manager. Cook had no authority to indorse checks or other commercial paper payable to the defendant in error. About December 5, 1922, Cook began the practice of depositing customer’s checks, given in payment of accounts due the Products company, in the petty cash fund in the People’s National Bank of Jackson, taking part thereof in cash for himself and depositing the balance to the credit of the Products company, and would afterwards cover this shortage by depositing in the People’s National Bank of Jackson to the credit of the Products company certain checks subsequently received from other customers, then sending to the home office of the Products company in payment of the original shortage his own check on the petty cash fund account, along with numerous other customers ’ checks. He thus showed payment of the account of the customer who had first paid, and a part of whose money he had appropriated to himself, and this shortage was made good with the company by paying the same with the money received from another customer. In short, he misapplied checks coming into his possession to cover up shortages theretofore existing, and paid the debt due the Products company with its own money, using one customer’s money to pay on the account of another.
 

 It seems to be undisputed that the amount of the shortages prior to March 1, 1924, was $3,408.34 ; that after March 1, 1924, Cook appropriated funds in the amount of $966.12, which the Products company never received either in payment of shortages existing prior to March 1st or otherwise, for
 
 *281
 
 which, amount of $966.12 the indemnity company admits its liability. «The question then becomes whether there is a liability under this bond for the dishonesty and fraud of Cook which took place prior to March 1, 1924, and which it is conceded amounted on that date to $3,408.34.
 

 We think the principle herein involved is the same as in the case of
 
 Golden Seal Assurance Society
 
 v.
 
 Ætna Casualty & Surety Co.,
 
 207 App. Div., 628, 202 N. Y. S., 674, wherein it was held:
 

 “Where dues in a fraternal benefit corporation, collected by its secretary in any month, were not payable at the home office until the second month thereafter,
 
 held,
 
 in an action on a fidelity bond, that secretary’s defalcation occurred when secretary originally converted corporation’s (money, though the defalcations were covered up from month to month by making them apparently good by payments out of collections for the succeeding month.”
 

 To the same effect may be cited the cases of
 
 First National Bank of Nashville
 
 v.
 
 National Surety Co.,
 
 (C. C. A.), 130 F., 401, 66 L. R. A., 777, and
 
 Supreme Council Catholic Knights of America
 
 v.
 
 Fidelity & Casualty Co. of N. Y.,
 
 (C. C. A.), 63 F., 48, both opinions being rendered by Lurton, J., afterwards a member of the Supreme Court of the United States.
 

 In the liability of sureties on the bonds of defaulting public officials it is quite generally recognized that the defaults of a prior term are not chargeable against the sureties on an official bond for a subsequent term.
 

 In
 
 Walker
 
 v.
 
 State,
 
 176 Ind., 40, 95 N. E., 353, it was held:
 

 
 *282
 
 “A county treasurer who misappropriates public money during his first term is liable upon his official bond therefor; and his repayment of the fund so misappropriated from the revenues received during his second term will not relieve his first term sureties or impose any liability therefor upon his second term sureties.”
 

 In the case of
 
 City of Detroit
 
 v.
 
 Weber,
 
 29 Mich., 24, in the majority opinion rendered by Cooley, J., it was held that a defaulting agent cannot make good his default as between himself and his sureties, on the one hand, and his -principal on the other, by taking the principal’s money for the purpose.
 

 In
 
 Sidner
 
 v.
 
 Alexander,
 
 31 Ohio St., 378, the Supreme Court of this state held:
 

 “Where a sheriff who was his own successor, had received money in his official capacity during his first term of office, which was in his hands when he gave bond and qualified for his second term, and subsequently failed, on demand, to pay the money to the party entitled thereto, the sureties on his official bond for the second term are not liable for such default.”
 

 In the opinion in that case at page 384, it is said:
 

 “When the demand was made, and the sheriff refused to pay, he was guilty of a breach of official duty, and, by relation, this operated a breach of the condition of the official bond in force at the time the money was received, and for which the sureties on the bond for the second term, which was subsequently executed, are not liable.”
 

 Other cases to the same effect might be cited in support of this theory.
 
 Bissell
 
 v.
 
 Saxton,
 
 77
 
 *283
 
 N. Y., 191;
 
 Inhabitants of Township of Freehold
 
 v.
 
 Patterson,
 
 38 N. J. Law, 255;
 
 Township of Paw Paw
 
 v.
 
 Eggleston,
 
 25 Mich,, 36;
 
 Inhabitants of Rochester
 
 v.
 
 Randall,
 
 105 Mass., 295, 7 Am. Rep., 519;
 
 Street
 
 v.
 
 Laurens,
 
 5 Rich. Eq., (S. C.), 227;
 
 Hewitt
 
 v.
 
 State ex rel. Brown,
 
 6 Har. & J. (Md.), 95, 14 Am. Dec., 259;
 
 United States
 
 v.
 
 Boyd,
 
 46 U. S., (5 How.), 29, 12 L. Ed., 36; Proctor
 
 Coal Co.
 
 v.
 
 United States Fidelity & Guaranty Co.,
 
 (C. C. ), 124 F., 424;
 
 T. M. Sinclair & Co.
 
 v.
 
 National Surety Co.,
 
 (1906) 132 Iowa, 549, 107 N. W., 184;
 
 United States
 
 v.
 
 Eckford’s Executors,
 
 1 How., 250, 11 L. Ed., 120;
 
 Walker
 
 v.
 
 State,
 
 (1911) 176 Ind., 40, 95 N. E., 353;
 
 Board of Education
 
 v.
 
 Robinson,
 
 (1900) 81 Minn., 305, 84 N. W., 105, 83 Am. St. Rep., 374;
 
 Lowry
 
 v.
 
 State, ex rel. Hull,
 
 64 Ind., 421;
 
 Parker
 
 v.
 
 Medsker,
 
 (1881) 80 Ind., 155;
 
 Ohning
 
 v.
 
 City of Evansville,
 
 66 Ind., 59;
 
 Goodwine
 
 v.
 
 State ex rel. Fleming,
 
 (1881) 81 Ind., 109;
 
 United States
 
 v.
 
 Morgan,
 
 (D. C.), 28 F., 48, (District Court, S. D. , N. Y., June, 1886), affirmed
 
 United States
 
 v.
 
 Morgan,
 
 (C. C.), 35 F., 489, decided 1888;
 
 Van Sickel
 
 v.
 
 Buffalo County,
 
 13 Neb., 103, 13 N. W., 19, 42 Am. Rep., 753;
 
 County of Buffalo,
 
 v.
 
 Van Sickle,
 
 16 Neb., 363, 20 N. W., 261;
 
 Myers
 
 v.
 
 United States,
 
 1 McLean, 493, Fed. Cas. No. 9,996;
 
 Trustees of Schools
 
 v.
 
 Smith,
 
 88 Ill., 181; Baylies, Sureties and Guarantors, p. 150, Section 9;
 
 Vivian, Treas.,
 
 v.
 
 Otis,
 
 24 Wis., 518, 1 Am. Rep., 199.
 

 Our attention is called to the case of
 
 American Bonding & Trust Co. of Baltimore
 
 v.
 
 Milwaukee Harvester Co.,
 
 91 Md., 733, 48 A., 72, in which case it was held:
 

 “Defendant, a surety company, executed to
 
 *284
 
 plaintiff a bond by which it agreed to make good such pecuniary loss as plaintiff might sustain during a certain period by reason of any fraudulent or dishonest act of plaintiff’s agent, in connection with his duties, amounting to embezzlement or larceny. The agent paid over to plaintiff all the money collected during the period covered by the bond, but he directed a part of the same to be credited on other accounts owing to the plaintiff, without knowledge by the plaintiff that the money collected by the agent from certain accounts was so applied to the payment of other accounts for which the agent was also liable. Held, that this action amounted to a fraudulent conversion by the agent of the money collected, and that the defendant is liable therefor under the bond.”
 

 Other cases may be cited in support of this theory, but as applied to the facts as disclosed by this record wé cannot regard this rule as controlling.
 

 We hold that Cook committed an act of. dishonesty and fraud toward his employer, the Products company, when he first misapplied funds by failing to turn over to it the money received by him in payment of the accounts; that the Royal Indemnity Company would not be liable for any act of Cook which was done before the bond was executed, because the bond contains nothing which is retroactive in character, but is rather prospective; that the misappropriation of funds after the ; date of the bond, with, which to pay his prior shortages, did not constitute a new pecuniary loss to the Products company under the terms of the Royal Indemnity Company bond, for the reason that the
 
 *285
 
 Products company had already sustained a pecuniary loss. The form of paying one customer’s account out of the money collected from another customer did not change the amount of the loss, for such loss already existed. The actual loss suffered by the Products company after the effective date of the indemnity bond was the additional amount that Cook misappropriated not used to pay prior defalcations, and for this amount the indemnity company acknowledges itself liable.
 

 As to the construction to be given an indemnity bond against loss sustained by reason of the fraud or dishonesty of an employe, the language of Spear, J., in
 
 Livingston & Taft, Trustees,
 
 v. Fidelity
 
 & Deposit Co.,
 
 76 Ohio St., 253, 81 N. E., 330, fairly states the rule. On page 264 (81 N. E., 332) he says:
 

 “Being contracts of indemnity against loss, such contracts should. be liberally construed in favor of the object sought to be attained, and where a clause is susceptible of two interpretations which seem equally fair, that should be preferred which affords the greater indemnity, but, like other contracts, they should receive a reasonable construction in order to carry out the presumed intention of the parties as expressed by the language used.”
 

 This announcement is not in conflict with
 
 Royal Indemnity Co.
 
 v.
 
 Northern Ohio Granite & Stone Co.,
 
 100 Ohio St., 373, 126 N. E., 405, 12 A. L. R., 378, which was an action upon a bond given under a building contract, nor with
 
 Great American Mutual Indemnity Co.
 
 v.
 
 Jones,
 
 111 Ohio St., 84, 144
 
 *286
 
 N. E., 596, 35 A. L. R., 1023, which was an action on an accident policy.
 

 We are of opinion that the doctrine announced in
 
 Golden Seal Assurance Society
 
 v.
 
 Ætna Casualty & Surety Co., supra, First National Bank of Nashville
 
 v.
 
 National Surety Co., supra,
 
 and
 
 Supreme Council Catholic Knights of America
 
 v.
 
 Fidelity & Casualty Co. of N. Y., supra,
 
 and the cases, above cited in support of that view of the law, should be adopted as the rule in this state. Entertaining that view, it becomes necessary to reverse the judgment of the Court of Appeals in its judgment of affirmance of the court of common pleas. This cause is remanded for further proceedings in accordance to law.
 

 Judgment reversed.
 

 Marshall, C. J., Allen, Kinkade, Robinson and Matthias, JJ., concur.
 

 Jones, J., not participating.