SUPREME COUNCIL CATHOLIC KNIGHTS OF AMERICA v. FIDELITY & CASUALTY CO. OF NEW YORK.[1]

(Circuit Court of Appeals, Sixth Circuit. May 8, 1894.)

No. 162.

1. BOND FOR FIDELITY OF EMPLOYE—EXTENT OF LIABILITY—ADMISSIONS OF RECEIPTS.

On the reappointment of the treasurer of a beneficial association for a new term, a surety company gave to the association its bond to make good "such pecuniary loss, if any, as may be sustained by the employer by reason of fraud or dishonesty of the employed in connection with the duties referred to, amounting to embezzlement or larceny, which was committed and discovered during the continuance of said term, or any renewal thereof." Held, that entries, receipts, and reports made by him during the life of the bond, in the ordinary course of his duty as treasurer, charging himself with certain items, were not conclusive against the surety as to the time when such items were received, there being no circumstances creating an estoppel in pais.

[1] Rehearing denied.

2. SAME—USE OF FUNDS TO MAKE GOOD EMBEZZLEMENTS OF FORMER TERM.
    Obligations of the association, which should have been paid by the treasurer during his former term, were carried forward by him into his new term, and paid out of current receipts. *Held* that, as such obligations were not discharged when assessments were made sufficient to meet them, but continued obligations until paid, their payment out of funds of the association did not amount to embezzlement or larceny committed during the new term, and the surety was not liable for the misappropriation.

3. SAME—MISREPRESENTATION AND CONCEALMENT.
    Such bond recited that the association had delivered to the company certain statements relative to the duties and accounts of the treasurer, which it was agreed should form the basis of the contract expressed in the bond. *Held* that, if such statements involved no misrepresentation or concealment, the contract could not be affected by loose parol statements, or concealment of facts about which no inquiry was made, or conduct on which no reliance was placed; nor by conversations, as to laws of the association, with its vice president, at the time of application for the bond, it not appearing that he had authority to make any representations on the subject; nor by the fact that at the time of such application the treasurer was in default to the association, there being no representation to the contrary in the statements delivered, and nothing to show that at that time the fact was known to any officer of the association.

4. SAME—CONSTRUCTION—TIME OF TAKING EFFECT.
    Such bond recited that it was made July 1, 1891, and stated that it was for a term ending July 1, 1892, and an indorsement on its back stated those days to be the dates of the bond and of its expiration; but the bond was dated July 10, 1891.   The premium received covered one year.   *Held*, that the bond was properly construed as in effect from July 1, 1891, without regard to evidence as to when it was accepted.

5. PLEADING—DUPLICITY—FRAUD IN PROCURING BOND.
    In an action on a bond to make good loss by embezzlement of an employé, a plea seeking to avoid the bond, as procured by misrepresentations as to the previous state of his accounts by the employer, averred that the employé was then a defaulter, and that the employer knew it, or could have known it by the exercise of diligence.   *Held*, that this was bad, as a double plea.

6. APPEAL—ASSIGNMENTS OF ERROR—STRIKING OUT PLEAS.
    An assignment that the court erred in striking out pleas to plaintiff's declaration is too general, under a rule of court requiring each error relied upon to be set out separately.

7. SAME—RULINGS ON EVIDENCE.
    Errors assigned in admission or rejection of evidence cannot be considered where a rule of court requiring such assignments of error to quote the full substance of the evidence admitted or rejected is not complied with.

8. SAME—OBJECTIONS NOT RAISED BELOW—VARIANCE.
    An objection to a bond as evidence, because it varies from the one declared on, where no exception was taken, and the variance—merely a clerical error in the declaration, in stating the date of termination of the bond—is not pointed out, will not be considered on appeal.

9. SAME—EVIDENCE SUBJECT TO EXCEPTION.
    Where a party consents to treat a document as read in evidence subject to exception, but no ground of objection is stated, and no exception is taken afterwards, no objection thereto can be p esented on appeal.

10. SAME—HARMLESS ERROR—STRIKING OUT PLEAS.
    Striking out pleas to the declaration is not prejudicial where any evidence competent under them would have been equally competent under other pleas.

11. SAME—REJECTION OF EVIDENCE.
    Exclusion of evidence tending to show fraud in procuring the bond sued on is not prejudicial where neither the pleas stricken out nor those on which the case was tried were sufficient to present any issue of fraud going to the validity of the contract.

12. TRIAL—INSTRUCTIONS—SUFFICIENCY OF EVIDENCE.

There is no error in withdrawing from the consideration of the jury a particular defense, where there is no competent evidence in support of it, on which a verdict could be based.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This was an action by the Supreme Council Catholic Knights of America against the Fidelity & Casualty Company of New York on a bond. At the trial the jury found for plaintiff. Judgment for plaintiff was entered on the verdict. Both parties brought error.

Xenophon Wheeler and Thomas McDermott, for plaintiff.

Creed F. Bates, Charles C. Hadal, Edwin R. Thurman, and J. Washington Moore, for defendant.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

LURTON, Circuit Judge. The appellant here and plaintiff below is the Supreme Council Catholic Knights of America, a corporation under the laws of Kentucky. In general terms it may be described as a fraternal and beneficiary association of the members of the Catholic Church. Its chief purpose seems to have been the establishment and maintenance of a life insurance feature, by means of which a sum not exceeding $5,000 was to be paid to the family of each member out of funds raised by death assessments and paid into the common treasury, and then, under the laws of the order, paid to the beneficiary entitled. The defendant corporation, the Fidelity & Casualty Company of New York, is a corporation of the state of New York, and is engaged in the business of guarantying the fidelity and honesty of officers, agents, and employés.

This suit was an action on a bond for $50,000, executed by the defendant company to the plaintiff corporation, insuring the fidelity and honesty of Michael J. O'Brien as supreme treasurer of the Supreme Council Catholic Knights of America. So much of said bond as is involved in the questions presented by the assignment of errors is as follows:

"This bond, made the first day of July, in the year of our Lord one thousand eight hundred and ninety-one, between the Fidelity and Casualty Company of New York, hereinafter called 'the company,' of the first part, and Michael J. O'Brien, of Chattanooga, Tenn., hereinafter called the 'employed,' of the second part, and Supreme Council Catholic Knights of America, hereinafter called 'the employer,' of the third part. Whereas, the employed has been appointed supreme treasurer at Chattanooga, Tenn., in the service of the employer, and has applied to the company for the grant by them of this bond, and whereas, the employed has heretofore delivered to the company certain statements and a declaration relative to the duties and accounts of the employed, and other matters, it is hereby understood and agreed that those statements and such declaration, and any subsequent statements or declaration hereinafter required by or lodged with the company, shall constitute an essential part and form the basis of the contract hereinafter expressed: Now, in consideration of the sum of three hundred and seventy-five dollars, as a premium for the term ending on the first day of July, eighteen hundred and ninety-two, at 12 o'clock noon, it is hereby declared and agreed that during such term, or any subsequent renewal of such term, and

subject to the conditions and provisions herein contained, the company shall, at the expiration of three months next after proof satisfactory to its officers of a loss as hereinafter mentioned, make good and reimburse to the employer, to the extent of the sum of fifty thousand dollars, and no further, such pecuniary loss, if any, as may be sustained by the employer by reason of fraud or dishonesty of the employed in connection with the duties referred to, amounting to embezzlement or larceny, which was committed and discovered during the continuance of said term or any renewal thereof, and within three months from the death, dismissal, or retirement of the employed: provided, that on the discovery of any such fraud or dishonesty as aforesaid the employer shall immediately give notice thereof to the company, and that full particulars of any claim made under this bond shall be given in writing, addressed to the company's secretary, at its office in the city of New York, within three months after such discovery as aforesaid, and within three months after the expiration of this bond, and the company shall be entitled to call for, at the employer's expense, such reasonable particulars and proofs of the correctness of such claim, and of the correctness of the statements made at the time of effecting this bond, or made at any time of the payment of any renewal premium, as may be required by the officers of the company, and to have the same particulars, or any of them, verified by statutory declaration; and any claim made under this bond, or any renewal thereof, shall embrace and cover only acts and defaults committed during its currency, and within twelve months next before the date of the discovery of the act or default upon which such claim is based, and upon the making of any claim this bond shall wholly cease and determine, and shall be surrendered to the company on the payment of such claim. And this bond is entered into on the condition that the business of the employer shall be continued to be conducted, and the duties and remuneration of the employed shall remain in accordance with the statements hereinbefore referred to; and if, during the continuance of this bond, any circumstance shall occur or change be made which shall have the effect of making the actual facts differ from such statements, or any of them, without notice thereof being given to the company at its office in New York, and the consent and approval in writing of the company being obtained, or if any willful suppression or misstatement be made in any claim under this bond, or any fact affecting the risk of the company at any time, or if the employer shall fail to notify the company of the occurrence of any act of dishonesty on the part of the employed as soon as it shall have come to the knowledge of the employer, or shall continue to intrust the employed with valuable property after such discovery, this bond shall be void from the beginning."

O'Brien succeeded himself as treasurer, having held the same office for two preceding terms of two years each. The defendant company was surety only from July 1, 1891, the date when his third and last term began. O'Brien acted under defendant's bond only from July 1, 1891, to September 10, 1891, when he abandoned his trust and fled the country. There was a jury and verdict against the defendant, as surety, for $15,722. From the judgment on this verdict both the plaintiff and defendant have sued out writs of error.

The principal question arising upon the plaintiff's assignment of error is as to the liability of the surety for certain items of receipt, aggregating $21,000, and with which O'Brien charged himself as of various dates between July 1 and 10, 1891. The contention of the defendant was and is that the charges so made by O'Brien against himself were misdated; that the moneys so charged were in fact received and paid out before July 1st, and were not, therefore, embezzled by O'Brien during the currency of its bond. The contention of the plaintiff was and is that the charges so made by O'Brien against himself were made during the life of the bond, and in the

ordinary course of his duty as treasurer, and are therefore conclusive upon him and upon his surety.

Evidence tending to show that these items had been received during the latter part of June, and paid out before July 1st, was admitted over objection. There was also evidence tending to show that O'Brien had a habit of dating his entries, letters of advice, and receipts about 10 days after the date of actual receipt. The court, in substance, instructed the jury that while admissions, entries, receipts, and reports made to other officials of the order during the life of the bond, and in the usual and ordinary course of his duty as treasurer, would be evidence affecting O'Brien's surety, yet such admissions or reports would not be conclusive, and might be contradicted and explained, and that it was for the jury to say, upon the whole evidence submitted to them, whether the items in controversy had been received before or after the execution of the bond in suit, and before or after the beginning of his third term; that, on the evidence, it was for them to say whether the sums so received were paid out before the currency of defendant's bond. The court also charged that the defendant surety would not be liable for any moneys received by O'Brien before July 1st, which were not in his hands when the defendant became bound as his surety; that for any defalcation before July 1, 1891, the defendant surety could not be made liable under the bond exhibited.

There has been a wide difference of opinion entertained by American courts as to the conclusiveness of official reports, or entries made by public officials in the ordinary course of official duty. There is a respectable line of authority, beginning with the case of Baker v. Preston, 1 Gilmer, 235, holding that such entries and reports are conclusive both upon the official making them and the sureties upon his official bond. That case involved the liability of the sureties upon the bond of a state treasurer who at the beginning of a second term had on hand, according to his own books, a large balance brought forward from a preceding term. The sureties were held concluded by the book balance thus brought forward, and not suffered to show that in fact the balance on hand was much less, by reason of a defalcation committed during the former term, and not appearing upon the books. The decision was by a divided court. Judge White dissented in a very able opinion, based upon the total want of authority to support the conclusion of the court. The decision has been much criticised in subsequent opinions of the Virginia supreme court. Munford v. Overseers, 2 Rand. 314; Craddock v. Turner's Adm'r, 6 Leigh, 116. It has been followed in State v. Grammer, 29 Ind. 530; Morley v. Town of Metamora, 78 Ill. 394; City of Chicago v. Gage, 95 Ill. 593; Boone Co. v. Jones, 54 Iowa, 699, 2 N. W. 987, and 7 N. W. 155,—and perhaps others. The doctrine has been repudiated, and such reports and entries held to be only prima facie evidence, and open to contradiction, by a decided weight of judicial opinion. U. S. v. Eckford, 1 How. 250; U. S. v. Boyd, 15 Pet. 187; U. S. v. Boyd, 5 How. 29; Arkansas v. Newton, 33 Ark. 277; Bissell v. Saxton, 66 N. Y. 55; Mann v. Yazoo City, 31 Miss. 574; Hatch v. Attleborough, 97 Mass. 537; Nolley v. Calla-

way Co., 11 Mo. 447; Nevada v. Rhoades, 6 Nev. 352; Townsend v. Everett, 4 Ala. 607; Vivian v. Otis, 24 Wis. 518.

Undoubtedly, there may occur cases in which the official should be estopped by his entries and reports, in consequence of special circumstances appearing constituting an estoppel in pais. In such cases the surety would be bound by the evidence which concluded his principal. But such estoppel could only arise under bonds conditioned for the faithful discharge of the duties of the office. Some of the cases cited above as following Baker v. Preston were in part based upon facts constituting estoppel in pais. So, under bonds obligating the surety for the faithful discharge of official duty by his principal, the evidence offered to show fabricated entries or false reports may show such official dereliction or fraud as in itself would constitute a breach of the obligation of the bond. Such was the case of U. S. v. Girault, 11 How. 22,—a case which counsel for plaintiff have urged was in conflict with U. S. v. Boyd, 5 How. 29. The opinion in each case was by Mr. Justice Nelson, and, when rightly understood, is in harmony and in accord with the earlier case of U. S. v. Eckford, 1 How. 250. In the case last cited the suit was upon the bond of a collector who had succeeded himself, and stood charged, when the bond in suit was given, with large balances, which were carried forward in subsequent reports as cash on hand. As to the effect of such charges, the court said:

"The amount charged to the collector at the commencement of the term is only prima facie evidence against the sureties. If they can show by circumstances or otherwise that the balance charged, in whole or in part, has been misapplied by the collector prior to the new appointment, they are not liable for the sum so misapplied."

In the Boyd Case, which was an action on the bond of a receiver of public moneys arising from sale of the public lands, it appeared that during the term of the bond he reported in his official reports the receipt of large sums as from the sale of public lands. Upon default his sureties were sued for the sums so reported. Their defense was that Boyd had never received the money so reported; that the charges so made were for lands which Boyd had entered in his own name, or in the name of others for his benefit, after his term of office began, but before the execution of his bond; that the lands so sold had never been paid for. Boyd simply charging himself as receiver in his accounts, as if the money had been paid, and carrying forward these charges in his subsequent reports. It was contended in that case, as in this, that any evidence contradicting the entries against himself and his official reports should be excluded as incompetent. Upon that point the court said:

"It has been contended that the returns of the receiver to the treasury department, after the execution of the bond, which admit the money to be then in his hands to the amount claimed, should be conclusive upon the sureties. We do not think so. The accounts rendered to the department, of money received, properly authenticated, are evidence, in the first instance, of the indebtedness of the officer against the sureties, but subject to explanation and contradiction. They are responsible for all the public moneys which were in his hands at the date of the bond, or that may have come into his hands afterwards, and not properly accounted for, but not for moneys which the officer

may choose falsely to admit in his hands, in his accounts with the government. The sureties cannot be concluded by a fabricated account of their principal with his creditors. They may also inquire into the reality and truth of the transactions existing between them. The principle has been asserted and applied by this court in several cases."

It will be observed that in the Boyd Case the fraud by which lands had been entered without the actual payment of the entry money—a thing absolutely prohibited by law—had been committed before the obligation of his sureties began. They were therefore not liable for a violation of law committed before his bond was given.

In Girault's Case, who was also a receiver, the facts were the same as in the Boyd Case, with this important distinction: Girault's fraud in entering lands without actual payment was committed during the currency of his bond. The bond was conditioned that he should faithfully discharge the duties of his office. While the sureties were not estopped to show that in fact he had received no money, and that his reports to the contrary were false and untrue, yet the proof which established this fact established a fraud for which his sureties were liable. In Girault's Case the question arose upon the sufficiency of a plea which set out the manner in which Girault had defrauded the government, and the circumstances under which he had charged himself for money which in fact he had never received. The plea was held bad because, as the court said:

"The condition of the bond is that Girault shall faithfully execute and discharge the duties of his office as a receiver of the public moneys. The defendants have bound themselves for the fulfillment of those duties, and are, of course, responsible for the very fraud committed by that officer, which is sought to be set up here in bar of the action on the bond."

Proceeding, the court distinguishes the case from Boyd's by saying:

"There the receipts which had been returned to the treasury department, upon which the indebtedness was founded, and which had been given on entries of the public lands without exacting the money, in fraud of the government, were all given before the execution of the official bond upon which the suit was brought. Their sureties were therefore not responsible for the fraud, and it was those transactions on the part of the receiver which had transpired anterior to the time when the sureties became answerable for the faithful execution of his duties, in respect to which it was held that they could not be estopped by his returns to the government." 11 How. 30.

The bond now in suit is not the bond of a sworn public official. In a more important particular still is it distinguishable from the bonds involved in all the cases cited above. It is this: All those bonds bound the sureties for the faithful discharge of the duties of the office occupied by their principal. The bond in suit is remarkable in that the only obligation of the surety is that it will make good and reimburse "such pecuniary loss, if any, as may be sustained by the employer by reason of fraud or dishonesty of the employed in connection with the duties referred to, amounting to embezzlement or larceny, which may be committed and discovered during the continuance of said term or any renewal thereof, and within three months from the death, dismissal, or retirement

of the employed." No circumstance tending to make out any estoppel in pais appears in the case. The general secretary of the order, who audited claims and drew drafts on the treasurer for their payment, was not dependent alone upon the reports of the treasurer as to either amount or date of his receipts. Under the laws of the association the subordinate lodges, called "branches," sent to the secretary duplicates of all letters of remittance to the treasurer on printed forms required to be used. From these duplicate notices the treasurer was enabled to learn when and what remittances had been received by O'Brien.

The insistence of the plaintiff is barren of all circumstances which would tend to move the conscience of a court, and is, in substance, this:

"It may be true that the $21.000 with which I seek to charge you, in addition to the sum adjudged against you, did not come to O'Brien's hands during the term covered by your bond, and that he in fact embezzled that sum before you undertook to guaranty his honesty, yet he has made entries on my books, and executed receipts and written letters of advice, while you were on his bond, whereby he admitted this sum did come to his hands during the currency of the bond, and you should not be now allowed to show that he did not receive and embezzle that money at the dates he has admitted he received it."

There is neither sound morals nor natural justice in this effort to shut out the truth and fix a liability upon the defendant for a defalcation occurring before it became obligated as a surety. Neither is there any principle of public policy or of settled law which would close the door to the truth under a bond such as that here involved.

We pass to another question: During O'Brien's preceding term he failed to pay certain drafts drawn during that term. These drafts were carried forward into the new term, and then paid out of current receipts. The contention of plaintiff is that these drafts should have been paid out of balances which should have been in his hands at the end of the preceding term; that, if the funds which ought to have been in his hands for that purpose had been theretofore embezzled, he could not make good a former defalcation out of the funds of his new term; and that the payment of these obligations out of the funds which came to his hands during the new term was in itself such a misappropriation as fixes the liability of his surety for the new term. The business of this association was not conducted in such a way that the obligation of the order was discharged when an assessment was made sufficient to meet it. Assessments were made, from time to time, of amounts deemed sufficient to meet death losses accrued, pay expenses, and provide a sinking fund. The liability of the order was not extinguished by the misappropriation of the fund thus assessed to meet accrued and fixed obligations. The funds coming to O'Brien's hands were not so earmarked as to amount to an appropriation of a particular dollar to the payment of a particular claim. If assessments were made sufficient to meet certain death claims, and the fund came to the hands of O'Brien, these claims were not thereby extinguished. If O'Brien embezzled the fund so appropriated, the association was not thereby relieved of liability. The claims were ob-

ligations of the order, and continued to be obligations until paid. When these obligations were paid out of subsequent funds of the order, it was only a case where the debt of the association was paid out of its own funds. No species of reasoning can make the application of the plaintiff's own money to the payment of its own obligations either embezzlement or larceny. The fund which had been provided for the payment of these claims had been already embezzled. The loss thus sustained should be borne by the bond in force when the default occurred. For that loss the new bond is not responsible.

It is assigned as error that the circuit judge, in his charge, referred to certain deposit tickets as having been "put in bank by O'Brien." The error assigned is that there was no evidence "that he did see or ever saw these slips, or that they are in his handwriting, or that he ever authorized it to be done." Neither plaintiff's assignment nor brief points out the evidence relating to these slips. The reply brief of the defendant is equally barren in citation of the record on this point. The result is that a needless labor has been imposed upon the court, only to find that the assignment is bad. The testimony of the accountant, Goodwin, and of the bank cashier, Davies, makes it circumstantially clear that the slips in question were the usual memoranda made by depositors, accompanying a deposit. They were produced as deposit slips, which came to the bank in the usual way, with evidence that they corresponded with O'Brien's account on the books of the bank. No objection was made below that they were not slips made by O'Brien, or authorized by him, and the court was entirely justified in referring to them as it did. We find no errors of which the plaintiff can complain.

The defendant's first assignment of error is too general, and violates the eleventh rule, which requires that each error intended to be asserted and relied upon shall be set out separately and particularly. The assignment is in these words:

"The court erred in striking out the pleas to plaintiff's declaration. They were competent and proper, and available under the statute as notices of defense, at least."

Any evidence which would have been competent under the first and fifth pleas stricken out would have been equally competent under the second and third pleas, and in point of fact all the evidence offered on the part of the defendant which was competent under either of these pleas was admitted under defendant's second and third pleas.

By the fourth, sixth, and seventh pleas, matters were presented presumably for the purpose of avoiding the bond, as having been procured through fraud and misrepresentation. The sixth plea was clearly bad, in that it did not connect the defendant by any averment with the alleged fraud or concealment or misrepresentation. The seventh plea, in addition to other objections, was bad as a double plea, presenting two defenses: First, that plaintiff knew O'Brien to be a defaulter; second, that if it did not so know, it ought to have known. The fourth and seventh pleas, stricken out, were as follows:

"(6) The defendant for further plea says that, at and before the execution and acceptance of the bond sued on, said O'Brien was a defaulter to plaintiff, which fact was known to them and concealed from the defendant, wherefore said bond is void, and of this it puts itself upon the country." "(7) For further plea, defendant says that plaintiff represented to defendant that it had examined O'Brien's accounts as supreme treasurer at the time the bond sued on was executed, and found them correct, when in truth he was a defaulter then, and plaintiff knew it, or could have done so by the exercise of diligence, wherefore the bond is void, and of this it puts itself upon the country."

The bond refers to certain "statements and declarations" relative to the "duties and accounts" of O'Brien, which it recites had been "heretofore delivered to the company," and constitutes and "forms the basis of the contract hereinafter expressed." This statement so referred to and made a part of the contract was in writing. It consisted of a series of questions and answers propounded to Mr. Coleman, as president of the plaintiff association, and answered by him. Thus the parties put in writing the statements and declarations of the plaintiff, which were to be treated as the basis of the contract. Neither of the pleas above set out undertakes to make any issue upon the representations so elicited, and made a part of the agreement. If that statement involved no misrepresentation or fraudulent concealment, then the contract would not be affected by loose parol statements, or by concealment of facts about which no inquiry was made, or by conduct upon which no reliance was placed. Neither plea presented in proper form any material defense, and there was no error in striking them out.

The second assignment is bad. When the bond in suit was offered to be read, the following colloquy occurred:

"Mr. Wheeler: I desire to read the bond. Mr. Bates: We object until it is proven, and because the bond offered varies from one declared on. Court: Any plea of non est factum? Mr. Wheeler: No, sir. Court: Read it."

No exception was taken, and the variance was not pointed out. The assignment now undertakes to point out that which should have been definitely stated when the objection was made. The alleged variance is as to the termination of the bond, the declaration stating July 1, 1893, and the bond showing that it ran until July 1, 1892; a clerical error in drafting a declaration, which could have been easily corrected if counsel had conformed to the well-understood rule, which requires that when an objection is made to evidence the ground of the objection must be specifically stated. This ruling carries with it the twentieth assignment of error. Mitchell v. Marker (decided May 8, 1894) 62 Fed. 139.

The third assignment is bad for the same reason. When the plaintiff offered its charter in evidence the counsel for defendant said, "I suppose we might treat it as read, subject to exception." No exception was afterwards made, and it must be regarded as read by consent. It is too late to present an objection now, or assign a ground for objection not pointed out in the first instance.

Defendant's fifth assignment of error is in these words: "The court erred in excluding the evidence offered by defendant that the

bond sued on was presented and accepted by plaintiff, in Cincinnati, on the 20th of July, 1891." The court construed this bond as in effect from the 1st day of July, 1891. The recital in the bond is that it was "made July 1st, 1891." The back of the bond is indorsed as follows: "Amount insured, fifty thousand dollars; annual premium, $375.00; date of bond, July 1, 1891; expires July 1, 1892." The bond is dated July 10, 1891. The clear presumption is that the defendant company undertook to indemnify the plaintiff against loss from embezzlement from the time the bond purports to have been made, July 1, 1891, for the term of one year. It received a premium from the plaintiff covering one year expiring July 1, 1892. With reference to bonds of this kind, executed upon a consideration, and by a corporation organized to make such bonds for profit, the rule of construction applied to ordinary sureties is not applicable. The bond is in the terms prescribed by the surety, and any doubtful language should be construed most strongly against the surety, and in favor of the indemnity which the assured had reasonable· ground to expect. The rule applicable to contracts of fire and life insurance is the rule, by analogy, most applicable to a contract like that in this case. We think the learned circuit judge was not in error in holding this bond as relating to the date when it purported to have been made, July 1, 1891, and that evidence as to when it was accepted was immaterial.

The twenty-second assignment of error is as to the instruction of the court as to when this bond went into effect, and is likewise overruled.

The twelfth and thirteenth assignments of error may be considered together. They are as follows:

"(12) The court erred in refusing to allow Mr. Hall, superintendent of defendant company, to detail the conversation had with T. J. Larkin, vice president of the defendant at the time of making application for the bond in question, as to the laws of the order, recently amended, mentioned by President Coleman in his letter, and to which defendant's attention was called by plaintiff. (13) The court erred in excluding from the jury the testimony of Hall, superintendent of the company, that the company refused to execute the bond for O'Brien unless the certificate should be required from the cashier of the bank where the order's accounts were kept, to be furnished to the supreme secretary of the order every Monday morning, showing the amount on hand at the close of business on the preceding Saturday night."

The contract in question must speak for itself. The only declarations and representations which the parties chose to make a part of or the basis of contract were the representations and declarations contained in the written questions propounded to Mr. Coleman, as president of the Catholic Knights, and his written answers thereto. Besides, it nowhere appears that Mr. Larkin, the vice president of the Catholic Knights, had any authority whatever to make any contract or make any representations with regard to the methods of business in the treasurer's office, nor in regard to the legislation of the order concerning assessments and disbursements. We think the court was not in error in ruling that conversations with Mr. Larkin were not admissible to change or modify the contract in any way.

The fourteenth and fifteenth assignments of error are dependent upon a like question.   The defendant company offered to show that O'Brien was short on the 25th of April, 1891, about $40,000.   It also offered to show that O'Brien was short in the funds of the order $61,000 at the time of the application for this bond.   Upon objection the evidence was excluded.   If this condition of O'Brien's affairs was unknown to the plaintiff order at the time this bond was applied for and accepted, such evidence would have been wholly immaterial.   The only representation made by Mr. Coleman, and referred to in the contract as being the basis of contract, was in answer to question 13 of the statement delivered to the defendant company.   That question was this: "When were the accounts last examined, and were they in every respect correct?"   To this question Mr. Coleman answered: "May, 1891, and reported correct by examiners,—three supreme trustees."   This evidence tended in no way to show that Mr. Coleman's answer was untrue.   His representation was that three examiners had examined O'Brien's accounts, and reported his accounts correct.   Now, if such an examination was made, and such a report was made to the council of the order, Mr. Coleman's representation was in no respect untrue.   The particular offer covered by this exception embraces no offer to show that Mr. Coleman, or any other officer of the order, at the time this bond was applied for, knew that Mr. O'Brien was a defaulter.

The nineteenth assignment must be overruled for the reasons above stated, as well as for the additional reason that the testimony sought to be elicited from Albright was hearsay.   It was not shown that Mr. O'Brien was present, and the members of the committee making the examination, which it is alleged showed a defalcation, was the best evidence of the fact.   It was incompetent for Albright to say what he heard a member of that committee say, especially in the absence of Mr. O'Brien.

The three assignments last mentioned are likewise bad, because there was no issue presented by the pleas for the purpose of avoiding the contract as procured through fraud.   In ruling upon the assignment alleging error in striking out certain pleas, we have shown that in our judgment none of the pleas stricken out tendered any issue of fraud going to the validity of the contract.   Neither of the pleas upon which the case was tried made any such issue, and the evidence excluded, and made the subject of assignments 14, 15, and 19, was immaterial.

The twenty-third assignment of error is in these words:

"The court erred in charging the jury: 'But did the officers know—did the representatives of this plaintiff know—that O'Brien was committing these defaults? And, if so, were they known during the currency of this bond. that is, during the time this bond was in force? I may say to you that I think the proof fails to show any such thing. Some complaints were made, but, upon investigation, complaints were found to be without foundation. There were not a great many complaints during the term of this bond, which is from the 1st of July to the 10th of September; and there is no evidence, as I can conceive, indicating that these plaintiffs knew that there was any defalcation during that period,—during the currency of the bond,—so far as O'Brien was concerned.' Defendant's counsel insist this was the point proof was excluded upon; that it was for the jury to determine whether

plaintiff knew of O'Brien's defaults; and that, as presented, the charge was misleading."

There was no error in this. No competent evidence, upon which a verdict could have been based, was submitted to the jury, which would have justified a verdict based upon the failure of the officers of the Knights to make prompt communication to the defendant of acts of fraud or dishonesty in O'Brien, discovered during the life of defendant's bond. Neither was any material or competent evidence excluded, so far as is pointed out by valid exception and proper assignment of error, which should have been admitted as bearing upon such a defense. It was not improper for the court to withdraw that defense from the consideration of the jury.

The defendant's fourth, ninth, eleventh, seventeenth, and eighteenth assignments of error are insufficient, in that they are not in compliance with rule 11 of this court, which requires that, "when an error alleged is to the admission or rejection of evidence, the assignment of error should quote the full substance of the evidence admitted or rejected."

The remaining assignments have been examined and are overruled. They are either immaterial, or not well taken. To rule upon them in detail would extend this opinion to an unpardonable length, and prove of no particular interest.

The judgment must be affirmed. Each party will pay one-half the costs of this court.