### KALAMAZOO RY. SUPPLY CO. v. DUFF MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1902.)

#### No. 978.

1. APPEAL—SUFFICIENCY OF RECORD—RULINGS ON ADMISSION OF EVIDENCE.

Under the rules of practice of the supreme court and of the circuit courts of appeal, a ruling on the admission or rejection of evidence is not reviewable either on a writ of error or on appeal in equity, unless the record discloses the ruling made, and the taking of an exception thereto, and there is a specific assignment of error on that ground.

2. PATENTS—EVIDENCE OF INVENTION—PRACTICAL SUCCESS OF DEVICE.

Where the question of invention or patentable novelty is fairly open to doubt, the practical success of the device, with the fact that it displaced similar devices in previous use, is sufficient to turn the scale in favor of invention and sustain the patent.

3. SAME—VALIDITY AND INFRINGEMENT—LIFTING JACKS.

The Barrett patent, No. 312,316, for a lifting jack, claim 3, describes an improvement over previous structures, which, while narrow, shows merit, and, in view of its practical success, must be conceded invention and novelty. Also *held* infringed.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

This was a bill by the Duff Manufacturing Company against the Kalamazoo Railway Supply Company for an injunction and for an account and recovery of damages for the alleged infringement of letters patent No. 312,-316, issued February 17, 1885, to Josiah Barrett. Claim 3 is the one specifically alleged to have been infringed by the defendant, and is as follows: "(3) In a lifting jack, a lever having its inner end composed of a stem provided with curved seats, and of side plates having openings in line with such seats, in combination with pawls 22 and 23, having their pivotal shafts formed integral with their lower ends, said shafts being constructed to fit in the openings in the side plates and in the seats in the stem, and having a firm bearing therein, substantially as set forth." The defenses relied on are: First, invalidity of the patent; and, second, noninfringement. Upon final hearing upon the pleadings and proofs the case resulted in a decree in favor of the plaintiff, adjudging that the patent was valid, and finding that claim 3 was infringed by the defendant, and the case is brought here on appeal for review.

See 100 Fed. 357.

Fred. L. Chappell, for appellant.

James I. Kay, for appellee.

Before LURTON and DAY, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after making the foregoing statement, delivered the opinion of the court.

Two points of advantage are insisted upon in the improvement covered by claim 3 as involving invention as distinguished from mere mechanical improvement, such as would be apparent to any one skilled in the art. The advantages are described by one of the machinists, introduced as a witness as being:

"The great strength and durability of the jack, the construction giving an extra length of bearing or wearing surface, and great strength between the pawl body and its shaft. The strength in the support for the pawl was obtained by the seating of this shaft for its full length in the handle. the pawl shaft being supported in a curved seat for the full width of the pawl, and, in addition to that, in the same seat extending into the bearings or side plates, which held the pawl into the seat."

With reference to this asserted improvement over anything found in the prior state of the art, the learned judge, presiding in the circuit court, said:

"The idea of a lever with its inner end composed of a stem with a curved seat presents no novelty, but this patent presents the first instance called to the attention of the court in which this seat is extended and the long bearing obtained by lengthening the pawl shafts so that they extend into the side plates. The play of the pawls in the complainant's device is not restricted. The pawls are held firmly in place, and the seat is extended by means of the side plates the full length of the bearings and pawls. This result had been sought, but not attained, before the issue of the patent to Barrett, and the proof shows that the lifting jack made after this patent practically displaced all previous jacks. In the Otstot patent there is no 'stem provided with curved seats and side plates having openings in line with such seats,' nor pawls 'having their pivotal shafts formed integral with their lower ends,' said shafts being constructed to fit in the openings in the side plates and in the seats in the stem and have a firm bearing therein. * * * The McIntyre and other patents introduced do not anticipate the third claim of complainant's patent, and, although the step from the previous devices was a short one, it was the all-important step, and shows more than mechanical skill which had been expended on the previous long line of lifting jacks displayed in the patent office. I find the complainant's patent valid."

And the circuit court disposed of the question of infringement by saying:

"The defendant's jack is a copy of the complainant's, except that the stem is split in the center, and then riveted together, and it has only one separable side plate instead of two; but everything contained in the third claim of complainant's patent is found in the defendant's jack, and the imitation has not even sought to be disguised."

The peculiar advantages in the handle and pawl construction in suit and relied on in the argument at bar were said to be in that feature of the construction by which the pawl shafts were made integral with the pawls and extended beyond them, resting in the curved seats in the hand lever and within side plates, by which they are held securely in the curved seats, thereby providing for a full and free swing of the pawls, and a solid support of the pawl upon the hand lever

directly under the body of the pawl, this being of greater width than the pawl body, because the pawl shafts extend out into the bearings; the combination making a firm and durable connection, capable of sustaining the heavy loads, jolts, and strains to which lifting jacks are constantly subjected in practical use. Stated in another form: It is claimed that in practical operation, by means of the broad seat for the pawl shafts, which are formed integral with the pawls and extend into the side plates, the combination sustains great weight and strain, and avoids "shearing strain" by retaining the pawl in position, and thereby avoiding the danger of breaking by striking against the sides of the seats for the pawl shafts. The evidence does disclose that the operative machine made under the patent in practical use does sustain great weight, and the danger of accident from breaking down, whether from direct weight or "shearing strain," is prevented, or much diminished. As the general construction and practical use of this and other lifting jacks are well understood, a more particular statement of the case or description of this and other devices is not deemed necessary.

Certain questions were made on argument in this court in relation to rulings in the court below on the admission of parts of the evidence. The record does not disclose, however, what ruling was made in the court below, nor does it disclose that particular exception was taken and reserved, and there is no specific assignment of error on this ground. It is assumed that the practice in this court is similar to what is said to be the practice on appeal in the supreme court of the state of Michigan in equity cases, under which error in the admission or rejection of evidence may be relied on for reversal without any assignment of error, and without the record showing any specific ruling in the court below on which such error is assigned. But the supreme court of the United States as early as 1791 adopted the system of appellate procedure of the court of chancery in England as outlines for its practice on appeals in equity, and the practice and procedure on appeals in equity are the same as those of the English system, as changed and modified by the rules of the supreme court of the United States or by act of congress. And the system of procedure on appeal in the supreme court of the United States, with such rules as have been adopted by the circuit court of appeals, constitute the system of procedure in the circuit courts of appeals; those courts having, by rule, adopted the practice in the supreme court of the United States, so far as the same shall be applicable. Under rule 35 of the United States supreme court (11 Sup. Ct. iii.) and under rule 11 of the circuit court of appeals (31 C. C. A. cxlvi., 90 Fed. cxlvi.) regulating the practice in this court, when the error alleged is to the admission or rejection of evidence, there must not only be an assignment of error, but this assignment is required to quote the full substance of the evidence admitted or rejected. It is needless to add what is plainly evident, and expressly declared on the face of the rule, that it applies equally to a case brought to this court for review on appeal in equity or on writ of error at law. Moreover, rule 13 of the supreme court of the United States (3 Sup. Ct. x.) declares that:

"In all cases in equity or admiralty heard in this court no objection shall hereafter be allowed to be taken to the admissibility of any deposition, deed, grant or other exhibit found in the record as evidence, unless objection was taken thereto in the court below and entered of record, but the same shall otherwise be deemed to have been admitted by consent."

And this rule has been expressly adopted in rule 12 of the circuit courts of appeals (31 C. C. A. clii., 90 Fed. clii.), under which it has been decided that an objection made for the first time on appeal to the admissibility of any exhibit is unavailing. Sugar Refining Co. v. Funch, 20 C. C. A. 61, 73 Fed. 844. The purpose of these rules, and their bearing and effect on the practice in this court, are quite evident. As the record discloses no exception or ruling in the court below, and there is no assignment of error in this court, the questions suggested are not open to consideration on this appeal. Randolph v. Allen, 19 C. C. A. 353, 73 Fed. 23; Supreme Council Catholic Knights of America v. Fidelity & Casualty Co. of New York, 11 C. C. A. 96, 63 Fed. 48; Farrar v. Churchill, 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 246.

With reference to the question of infringement we need only say that we concur in the view that the lifting jack made by the defendant is for every substantial purpose a mere copy of the complainant's structure. Practically speaking, it is quite evident that the stem is simply split in the center, the parts separately made, and then united by being firmly riveted together, and that the parts thus united effect the same result, and in substantially the same way. An infringement by the defendant is not thereby escaped. Bundy Mfg. Co. v. Detroit Time-Register Co., 36 C. C. A. 375, 94 Fed. 524; Sessions v. Gould (C. C.) 49 Fed. 855. The fact of infringement is too plainly evident to admit of extended discussion or treatment, and this issue may be dismissed with the statement that infringement is quite clear upon the record.

In regard to the question of validity it is evident that the patent described in claim 3 is a very narrow one in view of the prior art, and must be so construed, and that the issue is close. In practical use it is obviously true and necessary that a lifting jack be constantly subjected to the strain of great weight and to the force of heavy jolts. It is of primary importance, therefore, that a lifting machine or device, such as the jack in question, should be so devised and constructed as to sustain much strain from weight and jolting. Inspection of the complainant's structure made in accordance with claim 3 will disclose that the lever with its inner end composed of the stem provided with curved seats and with the side plates into which the shaft of the pawls extend with a firm bearing in the openings in these side plates and in the seats in the stems is well adapted to enable the shaft to sustain, in practical use, the strain made necessary in heavy work. Furthermore, in considering the question of patentable novelty the fact that the complainant's device was at once successful, and that, to a large extent, it practically displaced all lifting jacks in previous use, must be regarded as a circumstance of decided significance. Such circumstance clearly discloses the meritoriousness of the device or invention. And it is well set-

tled that, when the question of patentable novelty is fairly open to doubt, the practical success of the device, with the fact that it displaced similar devices in previous use, is sufficient to turn the scale in favor of the invention, and to sustain it. Smith v. Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; Magowan v. Packing Co., 141 U. S. 333, 12 Sup. Ct. 71, 35 L. Ed. 781. In the case of National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 45 C. C. A. 554, 106 Fed. 693, Judge Sanborn, in speaking for the circuit court of appeals, said:

"The patent itself is prima facie evidence of the novelty of his combination, and, if that issue was doubtful, this presumption would entitle it to a construction which would sustain, in preference to one which would destroy, the grant it evidences. In five years after Hein disclosed his invention and obtained his patent, his brake beam was in use on 85 per cent. of the railroads controlling 85 per cent. of the cars using iron brake beams in this country, and in eleven years from the date of his patent more than 1,000,000 of his brake beams had been made and sold. It is true that the extensive use of a machine or combination which is clearly without novelty does not dispense with that statutory requirement, and that it will not alone sustain a patent. But, where the question of novelty is fairly open for consideration under the law, the fact that a patented device or combination has displaced others which had previously been used to perform its function, and has gone into immediate and general use, is pregnant and persuasive evidence that it involves invention."

Numerous cases are cited as supporting this statement of the law. In the case of National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. it was declared that an old result obtained in a more facile, economical, and efficient way may be protected by patent as securely as a new machine or composition of matter. This was going further than we need go in the case at bar. In Hallock v. Davison (C. C.) 107 Fed. 482, it was said, in effect, that the presumption in favor of the validity of a patent arising from its issuance is much re-enforced by the fact that the patented machine was the first of its class to accomplish successfully the purposes intended, and that it had been admittedly copied by the defendant. "It is often difficult," said Judge Coxe, "to draw the line between invention and mechanical skill; but when the court has to deal with a machine which, for the first time, has achieved success after a long line of failures, which accomplishes results never attained before, which is new and useful and in large demand, it is generally safe to assert that the man who made it is an inventor, and not a mere mechanic." The proposition that courts incline to sustain a patent to the man who takes the final step which turns failure into success was distinctly and emphatically recognized in the case of The Barbed Wire Patent 143 U. S. 275, 12 Sup. Ct. 450, 36 L. Ed. 161. "Under such circumstances," said Mr. Justice Brown, giving the opinion of the court, "courts have not been reluctant to sustain a patent to a man who has taken the final step which has turned a failure into a success. In the law of patents it is the last step that wins." So, in Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, in view of the extensive use made of the invention, which was for an improvement in connected carriage springs, the invention was held patentable and valid, although the question was regarded as by no means free from doubt. In Krem-

entz v. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, the supreme court expressly approved the case of the Consolidated Brake-Shoe Co. v. Detroit Steel & Spring Co. (C. C.) 47 Fed. 894, in which Mr. Justice Brown had said:

"When the other facts in the case leave the question of invention in doubt, the fact that the device has gone into general use, and has displaced other devices which had previously been employed for analogous uses, is sufficient to turn the scale in favor of the existence of invention."

And in the still later case of Manufacturing Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, Mr. Justice Shiras, speaking for the court, said:

"It must be admitted that both of these patents granted to Augustus Adams, one in 1861, the other in 1866, describe mechanical contrivances closely resembling the invention in question, patented by H. A. Adams, October 15, 1872. There is present in all three machines a rotating shaft with spurs or wings, and the purpose sought to be effected is the same. But, as we have seen, when the test of practical success is applied, the conclusion is favorable to the last patent. Where the patented invention consists of an improvement of machines previously existing, it is not always easy to point out what it is that distinguishes a new and successful machine from an old and ineffectual one. But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the patent office has granted a patent to the successful inventor, the courts should not be ready to adopt a narrow or astute construction, fatal to the grant."

It is manifestly just to a patient and meritorious inventor that the court should be careful not to regard with too much importance the mere mechanical resemblance in the parts of the combination, or the combination as a whole, to the neglect of the result, and the success and efficiency with which the object aimed at is accomplished.

Upon the whole case, after examination of prior inventions and patents, we conclude that the structure described in claim 3 of the complainant's patent was not present in the prior patents relied on as anticipating, and that, practically, the desirable result accomplished by the complainant's patent and the method in which this is done are wanting in the earlier inventions of this class. While, as stated, the patent is a narrow one, we think it is valid and sustainable, and the decree of the court below is accordingly affirmed.