## ALVISO, (UNITED STATES v.)

[See United States v. Alviso, Case No. 14,434.]

---

## ALVISU, (UNITED STATES v.)

[See United States v. Alvisu, Case No. 14,435; Id. 14,436.]

---

## Case No. 269.

### ALVORD et al. v. UNITED STATES.

[13 Blatchf. 279.][1]

Circuit Court, N. D. New York. March 21, 1876.[2]

BOND—NEW BOND — PRESUMPTION OF INNOCENCE —RELEASE OF SURETY.

A. was surety for one S., as postmaster, on his official bond. On the 14th of September, 1861, a new bond, with other sureties, was accepted, whereby A. was, by statute, released from responsibility for all acts or defaults of S. committed subsequently. S. was afterwards removed from office, and at that time was a debtor to the United States. In a suit brought against A. on his bond, to recover such debt, it was not shown by the United States that S. had not in his hands, on the 14th of September, 1861, ready to be paid or applied, all the moneys of the United States with which he was justly chargeable: *Held*, that it must be presumed he had such moneys in his hands when the new bond was given; and that A. was not liable therefor.

At law.

John C. Hunt, for plaintiffs in error.

Richard Crowley, Dist. Atty., for the United States.

JOHNSON, Circuit Judge. The surviving defendants, with others, were sureties for one Sedgwick, as postmaster, upon his official bond. On the 14th of September, 1861,

[1][Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2][Reversing an unreported decree of the district court.]

a new bond, with other sureties, which, in compliance with the requirement of the department, had been given, was accepted, and thereupon, according to the statute, (Act July 2, 1836; 5 Stat. 88, § 37,) and by force of its provisions, the sureties in the prior bond became released from responsibility for all acts or defaults of the postmaster which might be done or committed subsequently. Sedgwick was removed from office October 21st, 1861, at which time, by his own testimony, he was indebted to the government in $3,969 45. A treasury transcript showed, that, between September 30th and October 21st, 1861, Sedgwick had paid, in excess of the amount debited to him during that period, and was entitled to be credited with, $1,010 14. There also was given in evidence the quarterly return made by Sedgwick, covering the period from July 1st to October 1st, 1861, by which he appeared, at the latter date, to be indebted to the United States in the sum of $2,933 21. It was further shown, that the amount received at the Syracuse post office, from September 14th to October 1st, 1861, was $954 09. But, it was not shown that, on the 14th of September, he had not in his possession, ready to be paid or applied as might be lawfully required, all the moneys of the United States with which he was justly chargeable. No demand upon him at this period was proved, no failure to pay or apply any such money as he was lawfully directed was shown, nor did the period for rendering his regular account arrive until the 1st of October. Now, assuming that sufficient data are contained in the proof, to enable the exact amount to be ascertained which he had, or ought to have had, in his hands, belonging to the United States, on the 14th of September, the precise difficulty is, that no light is thrown on the question, whether, in point of fact, he had then this money in his hands, as his duty required, or whether, before that time, he had, by its misapplication, become a defaulter. If he was then a defaulter, the present defendants are liable. If, on the other hand, he then had the money, and subsequently misapplied it, these sureties are not liable, for, the default, in that case, did not occur in their day. In the absence of evidence from which an inference can be directly drawn, the presumption of fact which the law raises must control. That presumption is, that an officer has done his duty, until the contrary appears. It was Sedgwick's duty, under the law and the bond, to keep the money which should come to his hands safely, without loaning, using, depositing in the banks, or exchanging for other funds than as allowed by law, till it should be ordered by the postmaster-general to be transferred or paid out. This duty he is presumed to have performed, until proof is made to the contrary. If the present action had been against the sureties

on the bond accepted September 14th, 1861, on the same proof, they would have been held liable, by reason of the same presumption. This was decided in Bruce v. U. S., 17 How. [58 U. S.] 437, 443. That was a case both of a new commission and a new bond. It was held, that, if a balance was due from an officer when reappointed, the presumption is, that it was then in his hands, and, if so, his sureties, on his reappointment, are responsible for its due application. But they may relieve themselves, by showing that he was in fact a defaulter when they became his sureties; and Ch. J. Taney said, giving the opinion of the court: "No officer, without proof, will be presumed to have violated his duty; and, if Bruce had done so, Steele had a right, under the opinion of the circuit court, to show it, and exonerate himself to that amount; but it could not be presumed merely because there appears, by the accounts, to have been a balance in his hands at the expiration of his first term." According to the rule declared in this case, the presumption is, that Sedgwick, on the 14th of September, 1861, was not a defaulter, but that he then had in his hands, in accordance with his duty, whatever sum he was chargeable with in favor of the government. As the court says: "If it was not wasted or misapplied during his first official term, but still remained in his hands, to be applied according to his official duty, the sureties in his first bond would not be liable." A reversal must be adjudged on the ground thus far considered.

In respect to the other questions presented, and especially in respect to the claim for a set-off, I agree with the decision of the district judge, and substantially for the reasons assigned by him. The judgment of the district court* must be reversed, and a new trial ordered, with costs to abide the event.