UNITED STATES v. HONSMAN et al.

(Circuit Court of Appeals, Ninth Circuit. October 31, 1895.)

No. 219.

OFFICIAL BONDS—RENEWAL—PRESUMPTION AS TO ACCOUNTING.

One H. was appointed postmaster at M., in January, 1890, and gave bond. In August, 1890, the post-office department required him to give a new bond, which he did; the new bond to take effect October 1st. On the settlement of H.'s account, before that date, there was found to be due from him to the government $1,689. On October 11th, H. remitted to the government $2,112, of which $1,689 was applied by the accounting officers upon the balance due October 1st. H. was afterwards removed from office, and an action brought against the bondsmen on his second bond for a balance of $2,235. *Held* that, in the absence of evidence that, at the time his accounts were settled before his new bond took effect, H. did not have in hand the amount of the balance shown by such accounts, it would be presumed that he did have it, that $1,689 of the remittance of October 11th was properly applied to the payment of such balance, and that the sureties on the second bond were not entitled to have this sum credited to them, upon the balance due from H. at the time of his removal.

In Error to the Circuit Court of the United States for the District of Montana.

Preston H. Leslie, U. S. Atty., for the United States.
Robert B. Smith and R. L. Wood, for defendants in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is an action brought by the United States, plaintiff in error, against H. E. Honsman, and the sureties upon his official bond, as postmaster, defendants in error,

to recover the sum of $2,235.63. The record shows that Honsman was postmaster at Missoula, Mont., from January 21, 1890, until February 13, 1891, when he was removed from office; that, when he entered upon the discharge of his official duties, he executed a bond, with sureties, as required by law; that prior to August 8, 1890, the post-office department required him to execute a new bond, and on the 8th day of August, 1890, he executed a new bond, with sureties, which is the bond sued on in this action; that the new bond was accepted on the 20th day of August, 1890, by the postmaster general, to take effect October 1, 1890.

The cause was tried before the judge without a jury. At the trial the United States introduced in evidence:

"A certified copy of the account of said Honsman with reference to the money-order business of said office; that it appeared from said account that, at the time the new bond above set out took effect, there was due from the said Honsman, as postmaster at Missoula, Mont., the sum of $1,689.85, which said amount was charged against the said Honsman under the bond originally executed by him at the time he entered upon the discharge of his duties as said postmaster; that on the 11th day of October, 1890, said Honsman had paid to the government of the United States the sum of $2,442, of which the sum of $1,689.85 was applied by the postmaster general, or the sixth auditor, to discharge the balance due from said Honsman, as such postmaster, under his old bond, in accordance with the provisions of section 3835, Revised Statutes of the United States; that thereupon said defendants, by their counsel, objected to their being held liable for any balance due from said postmaster under his said old bond, and prior to the execution and taking effect of the said new bond, and also, so far as the sureties on the new bond were concerned, they were liable only for the balance due from said postmaster from the date when the said new bond took effect, and that, so far as the sureties on the new bond were concerned, neither the postmaster general nor the sixth auditor had any authority, under said section of the statute, to apply said payment to discharge the said balance due from said postmaster under said old bond, and that, as to said amount, so applied, the said defendants were entitled to a credit upon their said balance of the entire amount of $2,442, so paid by said Honsman, as postmaster, on the 11th day of October, 1890,—which said objection of the said defendants was by the court sustained, and the court then and there held that the said obligation of the said defendants, as sureties, was only for delinquencies and balances accruing after the execution of the new bond, and after the date when the same was to take effect, to wit, October 1, 1890, and that they were entitled to a credit for the entire amount of $2,442, so paid, as aforesaid, by said postmaster, Honsman, on the 11th day of October, 1890."

Did the court err in so ruling? This is the only assignment of error presented by the record.

Section 3835 of the Revised Statutes of the United States reads as follows:

"Whenever any postmaster is required to execute a new bond all payments made by him after the execution of such new bond may, if the postmaster general or the sixth auditor deem it just, be applied first to discharge any balance which may be due from such postmaster under his old bond."

Section 3837 reads as follows:

"Whenever any of the sureties of a postmaster notify the postmaster general of their desire to be released from their suretyship, or when the postmaster general deems a new bond necessary, he shall require the postmaster to execute such new bond; with security. When accepted by the postmaster general, the new bond shall be as valid as the bond given upon the original appointment of such postmaster, and the sureties in the prior bond shall

be released from responsibility for all acts or defaults of the postmaster which may be done or committed subsequent to the last day of the quarter in which such new bond shall be executed and accepted."

It is conceded by counsel for the plaintiff in error that the sureties upon the second bond cannot be held liable for any defalcation of the postmaster which occurred prior to the time the second bond took effect, to wit, prior to October 1, 1890. The supreme court of the United States has repeatedly held that by no act of the officer or of the treasury department, or of both combined, can official moneys, collected by the officer and paid into the treasury department during one term of office, be appropriated to the accounts of the other term, to the prejudice of the sureties for the respective terms. U. S. v. January, 7 Cranch, 572, 575; U. S. v. Eckford's Ex'rs, 1 How. 250, 262; Jones v. U. S., 7 How. 681, 688; U. S. v. Stone, 106 U. S. 525, 529, 1 Sup. Ct. 287. But in the present case there is no attempt upon the part of the government to make the new bond retroactive, or to make the sureties thereon liable for any defalcation of the postmaster prior to the time the new bond took effect. Its contention is that the presumption necessarily arises from the evidence that the sum of $1,689.85, which was the balance due on account of the money-order business, on the settlement of the postmaster's quarterly account for the quarter ending September 30, 1890, remained in his hands on the 1st day of October, 1890, when the new bond took effect. If that money was in his hands on the 1st day of October, 1890, it is made certain and clear, by the provisions of section 3837, that the sureties upon the old bond were then released of all liability on account thereof, and the sureties upon the new bond would be liable therefor. Upon such a state of facts, there can be no question as to the right of the proper authorities, under the provisions of section 3835, to apply the sum of $1,689.85 out of the amount of $2,442, paid by the postmaster to the department on the 11th day of October, 1890, to the discharge of the balance due the government at the close of the quarter ending September 30, 1890.

Section 3846 of the Revised Statutes provides that:

"Postmasters shall keep safely, without loaning, using, depositing in an unauthorized bank, or exchanging for other funds, all the public money collected by them, or which may come into their possession, until it is ordered by the postmaster general to be transferred or paid out."

The treasury transcript, introduced by the government, was prima facie evidence that the money due from the postmaster at the close of the quarter ending September 30th remained and was in his hands on the 1st day of October, 1890. It was the money of the government. There is no presumption that the postmaster was at the close of the last quarter a defaulter, and, without any proof to the contrary, the presumption is that the postmaster held the money in his hands until October 11, 1890, and then forwarded the same, with other money due the government, to the post-office department.

Upon these presumptions, which are well established by the decided cases, it necessarily follows that the sureties upon the second bond were not entitled to have the sum of $1,689.85 allowed as a credit on their behalf, and that the court erred in so ruling.

In Alvord v. U. S., 13 Blatchf. 279, Fed. Cas. No. 269, the facts were that Alvord was surety upon the official bond of postmaster Sedgwick; that on the 14th of September, 1861, a new bond, with other sureties, was accepted; that afterwards Sedgwick was removed from office, and at the time of removal was indebted to the government; that it was not shown that Sedgwick did not have in his hands on the 14th of September, 1861, when the new bond took effect, all moneys of the United States with which he was then chargeable. The court held that it must be presumed that he had such money in his hands when the new bond was given, and that the sureties upon the old bond could not be held liable. In delivering the opinion, the court said:

"In the absence of evidence from which an inference can be directly drawn, the presumption of fact which the law raises must control. That presumption is that an officer has done his duty, until the contrary appears. It was Sedgwick's duty, under the law and the bond, to keep the money which should come to his hands safely, without loaning, using, depositing in the banks, or exchanging for other funds than as allowed by law, till it should be ordered by the postmaster general to be transferred or paid out. This duty he is presumed to have performed, until proof is made to the contrary. If the present action had been against the sureties on the bond accepted September 14, 1861, on the same proof, they would have been held liable, by reason of the same presumption."

In Bruce v. U. S., 17 How. 437, 443, which was a case of a new commission and a new bond of an Indian agent, it was held that, if a balance was due from the officer when reappointed, the presumption was that it was then in his hands; and, if so, the sureties under his reappointment would be responsible for its due application. Chief Justice Taney, in delivering the opinion of the court, said:

"When Bruce received his second commission, if any money or property which he received in his former term of office still remained in his hands, he was bound to apply and account for it, under the appointment he then received. The terms of the bond clearly require it, and his sureties are bound for it. It was so much money in his hands, to be disbursed and applied under his second appointment. Indeed, if it were otherwise, the government would have no security for it; for, if it was not wasted or misapplied during his first official term, but still remained in his hands, to be applied according to his official duty, the sureties in his first bond would not be liable, for there would in that case be no default or breach of duty in that term of office, and, if afterwards wasted or misapplied, it would be a breach of duty in that official term for which Steele was one of his sureties. Undoubtedly, the sureties in the second term of office are not responsible for a default committed in his first; but, if any part of the balance now claimed from him was misapplied during that period, it was incumbent on the plaintiffs in error to prove it. No officer, without proof, will be presumed to have violated his duty, and, if Bruce had done so, Steele had a right, under the opinion of the circuit court, to show it, and exonerate himself to that amount; but it could not be presumed merely because there appears by the accounts to have been a balance in his hands at the expiration of his first term."

In U. S. v. Stone, 106 U. S. 525, 529, 1 Sup. Ct. 287, which was an action upon the official bond of a collector of internal revenue, the court said:

"It is true that the sureties are liable only for money received during the term for which the collector was appointed, covered by the bond to which they are parties, and not for the misapplication of money received and misapplied before or after that term. U. S. v. Eckford's Ex'rs, 1 How. 250.

It is nevertheless equally true that they are liable for taxes which he collected during that term, upon assessment rolls received during a prior term, or for moneys or stamps on hand at the expiration of a former term, and. remaining in his possession at the beginning of a new one; for the collector is responsible, as well for moneys and stamps retained by him as his own successor, as for those received by him from any other predecessor, and the separate adjustment of his accounts for both periods, made at the treasury department upon its books, is prima facie evidence, not only of the fact and of the amount of the indebtedness, but also of the time when, and the manner in which, it arose. It is, of course, always open to the defendants sought to be charged to. show by opposing proof that the default charged occurred before the commencement of their liability."

In the present case the sureties did not offer any proof tending to show that the postmaster did not have in his hands the sum of $1,689.85, belonging to the government, at the time the new bond took effect. The case rested solely upon the prima facie evidence introduced by the government. In order to relieve themselves from responsibility, it was essential for the sureties to.prove, by circumstances or otherwise, "that the default charged occurred before the commencement of their liability."

The judgment of the circuit court is reversed, and cause remanded for a new trial, in accordance with the views expressed in this opinion.