Syllabus.

## TRUSTEES OF SCHOOLS, ETC.

*v.*

## WILLIAM M. SMITH *et al.*

88   181
123   626
24a  371
88   181
91a  ²227
88   181
f189  588

1.  SCHOOL TREASURER—*liability for notes coming to his hands.* Where, at the time of the appointment of a township school treasurer, the permanent school fund was all loaned out, and he received the notes therefor, and upon his death his administrator failed to find and deliver over a part of such notes, this was *held, prima facie* sufficient to show a default on his part to the amount of the notes not found, without proof of his having collected the same, for which his sureties were liable.

2.  The sureties of a township school treasurer, to exonerate themselves from liability, must show that he had paid out or disposed of the whole sum which came into his hands, according to law, including the amount in notes as well as in money, the treasurer being bound to respond in money or securities for the whole. The presumption that, as an officer, he did his duty, can avail nothing against proof to the contrary.

3.  SAME—*presumption as to time of defalcation.* Where a school treasurer was reappointed about five months before his death, but gave no new bond, and after his death it was found he was a defaulter in a given sum, in the absence of proof that he had in his hands all the moneys and securities entrusted to him during his first term of office, it was *held,* that it could not be presumed he paid over all the moneys and notes to himself as his own successor, so as to exonerate his securities. A defalcation being established, and no time shown when it occurred, it may as well be presumed that he misapplied the funds during his first term as during the time after his reappointment.

4.  An entry upon the minutes of the board of trustees, at the time a school treasurer is reappointed, that he made a report as treasurer, and the same was "carefully examined," is not evidence that his defalcation had not then occurred.

5.  Proof that a school treasurer, after his reappointment, received money on a school note in his possession, without proof when the note came to his hands, whether before or after his reappointment, is not sufficient to charge the sureties on his bond given at his first appointment.

6.  APPLICATION OF PAYMENT. Where a school treasurer, after his reappointment, and death without giving a new bond, was found to be in default, for a part of which his sureties on his bond were not liable, and judgment was recovered against his estate for the whole, and payment made of part of the judgment, it was insisted that the payment should be applied first on the part of the debt not secured, but it was *held,* this was not a case for the appropriation of payments, there being but a single indebtedness evidenced by the judgment.

APPEAL from the Circuit Court of McLean county.

This was a suit by the trustees of schools of township 24 north of range 4 east, of the third principal meridian, upon a township treasurer's bond to them, where there was judgment for the defendants, and the plaintiffs appealed.

The bill of exceptions shows that on the 29th day of March, 1870, one Isaac Smith was appointed township treasurer by the plaintiffs, and gave the bond in suit, with the defendants as sureties, it being in the usual statutory form, conditioned for the faithful discharge of all the duties of the office and for the delivery by the principal to his successor in office of all moneys, books, papers, securities and property in his hands as such township treasurer; that upon the giving of the bond Smith entered upon the duties of the office, and as such township treasurer at that time received of the permanent school fund (all loaned) $9140.50, and of the district school fund $786.88 ; that he continued to act under such appointment until March 28, 1872, when, at a meeting of the trustees of schools, as shown by their minutes, he made his report as treasurer, and the same was "carefully examined," and that he was then appointed as his own successor, and continued to act as treasurer without giving a new bond until October, 1872, when he died, and William McHugh was then duly appointed as his successor, and qualified as such, whereupon the administrator of Smith turned over to McHugh all the school notes and evidences of indebtedness and money and other school property found among the papers and property of said deceased; that Smith was then found to be a defaulter to the school fund of said township to the amount of $3281.67, which sum was proved up against the estate of Smith and allowed by the probate court of McLean county as a preferred claim ; that the estate has been fully settled, and that $1160.55 has been realized out of the estate, leaving a balance due to the school fund of $2121.12, no part of which has been paid.

It further appears, that between the time of Smith's reap-

pointment, March 28, 1872, and his death, there was paid to Smith $600, amount due on a school note in his possession, and $75 of the swamp land fund, and that he had no money on hand at his decease.    This was all the evidence.

The township treasurer's term of office, by the statute, is two years, and until his successor is appointed. Laws 1865, p. 115, section 32.    The statute requires that the township treasurer appointed by the board of trustees, shall, before entering upon his duties, execute a bond, with two or more freeholders as securities, for the faithful performance of the duties of his office, and that the securities shall be approved by at least a majority of the board.    Laws 1857, p. 281, sec 55.

Messrs. ROWELL & HAMILTON, for the appellants.

Mr. L. WELDON, and Mr. W. S. COY, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Appellees say, there is no evidence showing that Isaac Smith was a defaulter even at the time of his death; that there is no evidence that he ever received any of the permanent fund of the township, the evidence showing that the whole of that was loaned at the time of his appointment in 1870, that the only evidence of a default was, that after his death his administrator failed to find all the property belonging to the township. This latter was *prima facie* sufficient. The evidence shows that Smith, on his taking upon himself the office, March 29, 1870, received from two funds the sum of $9927.38, and if part thereof was loaned at the time, he had the securities for the amounts loaned, and he was bound to respond in money or securities to the extent of that sum. The deficiency between the amount on hand, and what had been received, which was found upon his death, made a case of default on his part. The whole amount of that deficiency, after deducting what had been paid by the estate of Isaac Smith to apply thereon, is $2112.12, and deducting therefrom $675, which was received after reappointment for the second term,

leaves $1446.12 as the sum which came into the hands of the treasurer during his first term of office; the fact that part thereof was securities for money loaned, making no difference, as before said. The treasurer, then, during his first term of office, became chargeable with this sum of $1446.12, and stands charged therewith until his discharge be shown.

Appellees, to exonerate themselves as sureties upon his bond, must show that the treasurer paid out or disposed of this sum in pursuance to law. *Coons* v. *The People,* 76 Ill. 384. Nothing of the kind is shown here. All that is pretended in this respect, is the urging of presumptions that there was no default, claimed as arising out of various statutory provisions in relation to the subject, and the general presumption of the performance of duty. But such presumptions avail nothing against proof to the contrary, that there was a default, which we find from the evidence.

It is said that Isaac Smith became his own successor in office, by virtue of his reappointment in March, 1872, and that the law presumes he paid over all the money and delivered all the property of which he was the custodian, to himself, as such successor, at that time—the law requiring a township treasurer, at the expiration of his term of office, to pay and deliver over to his successor in office all money on hand and all notes and securities for moneys, papers, etc.

Smith, after his reappointment, never gave a new bond with securities for the faithful performance of the duties of the office, the statute requiring that the township treasurer shall do so " before entering upon his duties." If there had been proof here that the amount in question was on hand at the time of the reappointment, March 29, 1872, then it would have been a subject for consideration, whether, under the circumstances here, it could be set up as a discharge that the treasurer had paid over such amount to his successor in office, himself, and faithfully discharged the duties of his office in so doing, he not having given a new bond. But there was no such proof, and hence, as we consider, that question does not

come up. It is insisted that it is the presumption that the amount was then on hand at the expiration of the first term. We do not admit that. The defalcation is established, but the time at which it occurred, whether during the first term or subsequent to the reappointment, does not appear, and we do not see why it may not as well be presumed that the treasurer misappropriated the money during the time of his first term of office, as during the time which elapsed after his reappointment.

The mere naked fact, as shown by the minutes of the trustees, that the treasurer, at the time he was reappointed, made his report as treasurer, and the same was " carefully examined," we do not attach any significance to, as proof in this regard. It can be the foundation of only conjecture. The report was but a statement of the treasurer, and it was carefully examined, that is all.

As respects the $600, shown by the evidence to have been paid to Smith between the time of his reappointment, March 28, 1872, and his death, on a school note in his possession, appellants claim that appellees are liable for that also; that this was a note in the hands of Smith as treasurer, during the two years of his term of office in respect of which the bond was given, and that it is not shown that this note was properly accounted for and paid over to the treasurer's successor in office according to the condition of the bond. We may dismiss this with the remark, that it does not appear that this note was in the hands of Smith during the said two years. All the evidence shows is, that it was a " school note in his possession." It might have first come into Smith's possession as well during the five months after his reappointment, as during the two years previous.

The whole amount of the defalcation, including the $675, shown by the evidence to have been received by Smith after the expiration of the two years, was $3281.67, of which total, $1160.55 has been paid by his estate, and it is insisted further, by appellants, that the law should apply this $1160.55 first to the payment of the $675, and then on the remainder of the

defalcation, in accordance with the principle that where a creditor holds two debts against another, one secured and the other not, and a payment has been made by the debtor without application of it by either party, the law will apply it to the debt not secured, thus leaving $2121.12 as the amount of appellees' liability.

We do not regard this a case for the appropriation of payments. There were no two debts here, and no opportunity for the application of payments, but a single indebtedness, which was merged in a judgment in favor of the creditor, to-wit: the allowance of the claim by the probate court, and the payment made was simply one on the judgment and a credit to be deducted therefrom.

Being of the opinion that the evidence shows here a liability against the appellees to the extent of the $1446.12 hereinbefore declared, and no further, the judgment will be reversed and the cause remanded.

*Judgment reversed.*