## The People, for use etc., Appellee, v. Frank B. Bowman et al., Appellants.

1. JURISDICTION—*when objection by one party available to all.* If the jurisdiction of the court is questioned by one defendant, such objection is available to all defendants notwithstanding they have not joined therein, if the cause of action is not susceptible of being severed.

2. JURISDICTION—*how question of, raised in chancery.* The jurisdiction of the court to entertain a cause of action presented may be raised by answer or by plea.

3. JURISDICTION—*when equity without, to render decree against sureties.* Equity has no jurisdiction to entertain a proceeding to

compel an accounting with respect to a public official and to render a decree against his several sureties upon separate and distinct official bonds given during successive terms of office.

4. SURETYSHIP—*extent of liability upon official bond.* Sureties upon the bonds of a public official who has served several successive terms, giving separate and distinct bonds for each term, are only liable for the default occurring during the term or terms for which the particular bond or bonds were given.

Bill in equity. Appeal from the Circuit Court of St. Clair county; the Hon. B. R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1908. Reversed and remanded. Opinion filed March 4, 1909.

B. H. CANBY, C. E. POPE, D. E. KEEFE, AUGUST BARTHEL, L. D. TURNER and WISE, McNULTY, & KEEFE, for appellants.

WINKELMANN & BAER, for appellee.

MR. PRESIDING JUSTICE MYERS delivered the opinion of the court.

For statement of this case we adopt, with some modifications, that made by appellants. A supervisor of commons in the village of Cahokia was authorized by an Act of the legislature in 1827, with duties and powers defined and enlarged by a number of subsequent acts. The statutes also provide for the election of trustees, whose duties respecting funds arising from the lease or sale of the commons' property are likewise specified.

By the Act of 1841, the supervisor was authorized to survey and divide the commons into lots and lease the same and the proceeds, thus derived, were to be paid to the trustees and applied to the education of the children of the inhabitants of the village of Cahokia, and for no other purpose whatever. The provision which prohibited the appropriation of any part of the fund to any other than school purposes was repealed in part by an act, approved February 14, 1855. An act was passed in 1855 authorizing the sale and conveyance of lots in fee simple title.

By an act of the legislature approved March 24, 1874, the supervisor was authorized to sell all the leasehold property when authorized so to do by a vote, and convey thereby the fee. The act provided for an election and an election was held on the 18th day of November, 1876, under the laws authorizing the supervisor to sell the commons of the village. Section seven of that act provided that the money arising from such sale shall be applied, after paying necessary expenses, to the same purpose that rents and profits derived from the leasing the commons have been hitherto applied under authority of law, but until otherwise provided by law only the interest shall thus be applied.

Section eight provides, that "the officer or officers authorized by law to lease the commons * * * shall have the custody of all money derived from leasing or selling the same * * * and shall give bond * * * with sureties to be approved by the county judge * * * for the use of the inhabitants of such town or village and be conditioned for the faithful discharge of their duties, and accounting for and proper application of all money that may come into his or their hands." Section nine: "Money derived from such sales may be converted into bonds of the United States, or State of Illinois, or other equally good securities or may be loaned on notes secured by mortgage on real estate worth at least double the sum loaned." Under this act most of the property held in common has been sold by various supervisors and the money derived therefrom used, promiscuously, for the purposes authorized by the trustees of schools. The interest not being sufficient to maintain the schools, the principal fund was drawn upon and paid out upon the order of the trustees, from time to time, by the various supervisors until it was all exhausted.

In 1890, Antoine (called Anthony) Bordeaux was elected to the office of supervisor for the village of Cahokia, and after his election, entered into a bond in

the sum of $50,000 with Clovis Soucy, Mary Soucy
et al., as sureties. The term of his office was for the
period of two years; and he was re-elected to this
office for four successive terms, making a period of
eight years. During this period, the evidence tends
to show that some of the lands were sold, and moneys
were collected, which were outstanding and due upon
mortgages for fee simple lands. His successor in
office was Camille Droit, and upon his election to
office as supervisor, he filed a bill in equity in the Cir-
cuit Court of St. Clair county, Illinois, against Antoine
Bordeaux, Frank B. Bowman, Mary Soucy, et al. The
bill represented that said Bordeaux had misappro-
priated the moneys coming to his hands, while super-
visor, which belonged to the village, and prayed for
an accounting and decree for the amount that was due.
To this bill a demurrer was filed and overruled, after
which an answer was filed on behalf of the defendants
herein mentioned denying the allegations of the bill.

The evidence shows that from 1890 to 1892 Mary
Soucy, one of the defendants here, was on Bordeaux's
bond as supervisor, and that from 1892 to 1894 Frank
B. Bowman was on his bond, and that from 1896 to
1898, Edward Abend was on his bond. The evidence
shows that for the eight years which he served as
supervisor, he had four bonds, and each bond signed
by different persons as sureties. The sureties upon
the bonds were different each time a bond was given.
During the time that Abend was surety on Bordeaux's
bond, he caused a citation to issue against Bordeaux
from the County Court of St. Clair county, and as a
result of this Bordeaux made a settlement with the
trustees of the village in which it was found that he
had in his hands moneys or securities, the sum of
$3,174.21, and he was ordered by the court to execute
a new bond. After the bill was filed, the matter was
continued from term to term until the September term,
1907, when it was tried upon the bill, answers and rep-
lications, and a decree was entered by the court in

favor of the complainants, in which the court found different sums of money to be due from the respective bondsmen and ordered the same to be paid. The court adjudicated the rights of the parties and decreed that Mary Soucy, one of the sureties on the bond, should pay to the complainant the sum of $2,414.06 as principal, and the sum of $376.10 as interest, making a total of $3,290.16 with 5 per cent. interest thereon from the 3rd day of September, 1907; that the defendant, Frank B. Bowman, should pay to the complainant the sum of $753.89; that the executor of the estate of Edward Abend, should pay to the complainant the sum of $8,834.16, and directed that the several sureties upon the several bonds should pay the amounts of money in said decree specified to the complainant. Exceptions were taken to the decree, and an appeal prayed for to the Appellate Court of the Fourth District by the solvent sureties.

There are at least two contentions made by appellants under which the decree in this case must be reversed and remanded. The jurisdiction of the Circuit Court was challenged by the answer of appellant, Frank B. Bowman, on the ground that the complainant had a plain, adequate and complete remedy at law in respect to any liability, if any, under the bond signed by him as surety. This saves, for him, the question for consideration by this court, and inasmuch as he is joined in the bill and decree with the other appellants, in such manner that there may be no severance of parties and interest by decree in this court, this objection by one defendant, avails as to all. The bill seeks to bring into equity four entirely distinct and separate causes of a common law action, in which there is no joint liability nor equitable connection between the parties defendant. Separate bonds with different sureties were given by Bordeaux, and in each case the complainant's right of action, if any, was upon the bond against Bordeaux and his surety, for which there was a plain, adequate and complete

remedy at law, and for this reason a court of equity should not entertain the bill when objection is made by plea or answer. This proposition is so well established and understood that citation of authority is unnecessary. The fact that there were five such causes of action, each based upon a separate official bond, with different sureties and relating to different terms of office, in nowise changes the forum to which the complainants should resort, and we find no decision to authorize a bill in equity to recover against sureties on an official bond, under facts similar to this case.

We do not think that several independent actions, such as we find here, may be combined in one proceeding and have several distinct and separate judgments embodied in one decree as done in this case. Appellant Mary Soucy was surety on the bond of Bordeaux for the term beginning March 4, 1890, and ending March 6, 1892. Bordeaux was re-elected to the office of supervisor and qualified for the term beginning March 6, 1892, by giving bond with other and different sureties, so that the liability of Mary Soucy, as surety, is limited to such default or misappropriation of funds by Bordeaux during his first term, that is, for only such default or misappropriation as occurred between March, 1890 and March, 1892. It is the contention which we find justified by an examination of the abstract, that there is no evidence of any default or misappropriation of money by Bordeaux, during that time. There is evidence that he received from his predecessor $674 and from the sale of land $1740.06, a total of $2414.06, which with interest allowed by the court, amounts to $3290.16, the sum which the court decreed should be paid by Mary Soucy.

We find no authority in conflict with the proposition, that when one succeeds himself in office and gives a new bond which is approved, and entered upon his second term, the sureties upon his first bond are only liable for any default which occurred during the term for which that bond was given, and

that fact must be proven.   Appellee contends that having shown that money came into Bordeaux's hands, it devolved upon the defendant surety to prove what became of it, no shortage or default appearing until a subsequent term for which the surety was not bound. Such is not the law as we understand it.  If we are to deal in presumptions, it would be in favor of the surety to the extent that he is presumed not to be liable until liability is shown.   According to authority no default will be presumed because a balance appears to have been in his hands at the end of his first term, the presumption being that the defaulting officer has such balance in hand when he entered upon his second term.   Bruce v. United States, 17 Howard, 437.

As between the sureties on the bond for the first term and those on the bond for the second or succeeding term, the sureties on the second bond are *prima facie* liable for the shortage appearing during the second in funds with which the defaulting officer was chargeable at the beginning of his second term.   Pine County v. Willard, 39 Minn. 125.   The obligation to make good the defalcation of a public officer rests upon the sureties of the term in which the defalcation occurred.    Potter et al. v. Board of Trustees, 11 Ill. App. 280; Bogardus v. The People, 52 Ill. App. 179; Trustees v. Arnold, 58 Ill. App. 103.   In reply to this contention, appellee relies upon the case of Trustees of Schools v. Smith, 88 Ill. 181.   It is observed that in the case cited, Smith, the township treasurer on whose bond the suit was brought, never gave but the one bond and never qualified for his second term by giving a new bond as required by the statute.   The court says: ''It is said that Smith became his own successor in office by virtue of his reappointment in March, 1872, and that the law presumes he paid over all the money and delivered all the property of which he was custodian, to himself, as successor at that time, the law requiring a township treasurer, at the expiration of his term of office, to

pay and deliver over to his successor in office, all
money on hand and all notes and securities for moneys,
papers, etc.  Smith after his reappointment *never gave
a new bond* with securities for the faithful performance
of duties of the office, the statute requiring that the
township treasurer shall do so 'before entering upon
his duties.' ''. At that time the term of town officers
was for one year ''and until others are elected or ap-
pointed in their places and are qualified,'' and upon
the proposition, that sureties may be held until a suc-
cessor is *elected and qualified,* that is, during the term
as extended by statute, the opinion in the Smith case
*supra* has application, but under the facts and conten-
tions of appellants in this case, it may not control.  To
hold otherwise would be to bring all the sureties on
the several bonds under liability *prima facie* at least,
for all defaults or misappropriation of funds without
respect to the time when such default occurred.  Such
in our opinion is an undue enlargement of the obli-
gation assumed by the sureties in this case.  ''A surety
is only to be held by the precise terms of his under-
taking.  His liability is *strictissimi juris* and cannot
be extended by construction or enlargement by the act
of others.''   Orton v. City of Lincoln, 156 Ill. 499.

Without discussing other contentions made in argu-
ment, we deem it sufficient that we have carefully ex-
amined the abstracts and considered all that has been
said and do not find other error or cross-error which
alone would justify a reversal or modification of the
decree.  For the reasons indicated the decree of the
Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*